849 F.2d 380
 James ROWLAND, Daniel Vasquez, and Robert Borg, Petitioners,
v.
UNITED STATES DISTRICT COURT FOR the NORTHERN DISTRICT OF
CALIFORNIA, Respondent.
Joseph Toussaint, et al., Real Parties in Interest.
 No. 88-7078.
 United States Court of Appeals,
Ninth Circuit.
 
 Submitted Motions Calendar
 March 31, 1988.*
 Decided June 7, 1988.
As Amended June 15, 1988.
As Amended on Denial of Rehearing Sept. 19, 1988.
 Bruce M. Slavin, Deputy Atty. Gen., State of Cal., San Francisco, Cal., for petitioners.
 Mark A. Chavez, San Francisco, Cal., for real parties in interest.
 Petition for Writ of Mandamus to the United States District Court for the Northern District of California.
 Before CANBY, BEEZER and KOZINSKI, Circuit Judges.
 PER CURIAM:
 
 
 1
 This lawsuit was brought on behalf of "all prisoners confined in or subject to confinement in administrative segregation in four California state prisons." Toussaint v. McCarthy, 597 F.Supp. 1388, 1391 n. 1 (N.D.Cal.1984), modified, 801 F.2d 1080, 1114 (9th Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987); see 597 F.Supp. at 1393 n. 5 (quoting class certification order). The district court's permanent injunction, which corrected various facility-specific unconstitutional conditions, was limited to San Quentin and Folsom prisons. Id. at 1391 n. 1. The district court appointed a special master, known as the "Monitor," to inspect the prisons and review compliance with the permanent injunction. See id. at 1420-22.
 
 
 2
 The California prison authorities apparently decided to resolve some of the problems at Folsom by moving prisoners to a new facility nearby, referred to as New Folsom. In an earlier order, the district court had held that New Folsom was a separate facility from Folsom and therefore "not subject to the Judgment of Permanent Injunction." Toussaint v. Rowland, No. C-73-1422 SAW, mem. at 2 (N.D.Cal. Feb. 4, 1988) ("New Folsom order"). It reaffirmed that holding when it denied plaintiffs' motion to modify the certification order and include New Folsom inmates in the class. Id. at 6. Despite these rulings, the court ordered the Monitor
 
 
 3
 to investigate the transfer of class members to New Folsom to:
 
 
 4
 (a) determine whether conditions at New Folsom violate the Constitution;
 
 
 5
 (b) determine whether transfer of class members violates the Permanent Injunction;
 
 
 6
 (c) recommend any appropriate relief for class members transferred to New Folsom in violation of their rights under the Permanent Injunction.
 
 
 7
 Id. Defendants bear the "costs of the mastership, including the Monitor's fees and expenses," Toussaint, 597 F.Supp. at 1421, as well as plaintiffs' attorney's fees connected with the investigation of New Folsom. New Folsom order at 4-5.
 
 
 8
 The district court's order authorizing the Monitor to visit New Folsom appears to be premised on two theories. The first is that the Monitor should "determine whether conditions at New Folsom violate the Constitution." Id. But a court has no jurisdiction to send an emissary into a facility not covered by its permanent injunction to determine whether there are any constitutional violations there. If such violations exist, they must be established on the basis of a new lawsuit brought by allegedly aggrieved parties. This is a fundamental aspect of our Article III jurisprudence.
 
 
 9
 The district court's second theory is based on the suspicion that the "transfer of class members [from Folsom to New Folsom may] violate[ ] the Permanent Injunction." Id. As the district court explained, the Monitor was being sent to determine whether the transfer of prisoners subverted the purpose of the injunction. This rationale is unpersuasive as well. The permanent injunction in this case was based on conditions existing at Folsom--double celling, poor heat and ventilation, antiquated plumbing and electrical systems, inadequate lighting, intolerable noise levels, substandard personal hygiene and sanitation, contaminated food, an inadequate prison law library, and so forth. Removing segregated prisoners from that facility is one way for defendants to satisfy the purposes behind the injunction. We can see no way in which the permanent injunction could be subverted or undermined by removal of the prisoner from a facility found to be old, overcrowded and dirty. Whatever the conditions may be at New Folsom, they would not--indeed, they could not--violate the permanent injunction because that facility is "not subject to the Judgment of Permanent Injunction."
 
 
 10
 We therefore conclude that the district court was without jurisdiction to authorize the monitor to inspect New Folsom. While mandamus constitutes extraordinary relief, we find the conditions for its issuance satisfied here. See Bauman v. United States District Court, 557 F.2d 650, 654-55 (9th Cir.1977). In particular, we determine that the district court's order, being well in excess of its jurisdiction, is "clearly erroneous as a matter of law." Id. Petitioners may well be irreparably damaged through interference with the administration of New Folsom and the cost of subsidizing the Monitor's activities.* Moreover, because no final or otherwise appealable order need follow from the Monitor's investigation, the district court's error may not be subject to correction by some "other adequate means, such as a direct appeal." Id. at 654. We therefore issue a writ vacating the district court's order insofar as it authorizes the monitor to investigate New Folsom prison.
 
 
 11
 MANDAMUS ISSUED.
 
 CANBY, Circuit Judge, dissenting:
 
 12
 In granting the extraordinary remedy of mandamus, the majority unduly confines the exercise of the district court's equitable powers. "[B]readth and flexibility are inherent in equitable remedies." Swann v. Charlotte-Mecklenberg Board of Education, 402 U.S. 1, 15, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971). Surely when a district court issues a permanent injunction and establishes a mechanism for monitoring compliance, the court has jurisdiction to determine whether the transfer of class members "violates the Permanent Injunction." Yet the majority suggests that Article III prevents a district court from ordering an inspection intended, among other things, to determine that question.
 
 
 13
 The majority apparently concludes that there is no way that a transfer of class members to a facility not covered by the injunction could violate the injunction. I am not so readily convinced that no transfer of prisoners from Folsom Prison could possibly violate the permanent injunctionapplicable to that facility. If, for example, the state built a new prison on the old prison grounds, and there duplicated all of the physical and procedural characteristics that had violated the Constitution in the old facility, I would not be prepared to issue an extraordinary writ to prevent the district court from even examining whether its injunction had been violated. I do not suggest that the state is evading the district court's injunction; I simply would not preclude the district court from finding out whether it is. If the state were violating the permanent injunction, additional remedies might well be in order, by way of supplemental complaint or otherwise. See Griffin v. School Board of Prince Edward County, 377 U.S. 218, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964) (upon supplemental complaint, court may enjoin county from closing schools previously ordered desegregated).
 
 
 14
 Depending upon what a survey of New Folsom Prison might show, the district court might or might not take steps further to effectuate and protect the injunction it has already issued. If the district court, in fashioning further remedies or in enforcing existing ones, overstepped the bounds of its authority, this court could correct any errors upon an appeal with a full record. Instead, the majority has chosen to exercise its powers of mandamus to prevent the district court from taking the first investigatory step. Believing this action to be an unnecessary and unjustified interference with the district court's policing of its own decree, I dissent.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 *
 In their petition for rehearing, plaintiffs suggest a conflict with National Org. for the Reform of Marijuana Laws v. Mullen, 828 F.2d 536 (9th Cir. 1987). In Mullen, we held that there was "no prospect of irreparable harm from payment of the master's fees, costs, and expenses because the money paid can be recouped." Id. at 542 n. 2. This merely recognizes that where costs wrongfully assessed are recoverable, having to advance them does not amount to irreparable harm. Here, plaintiffs are a class of prisoners; there is no reasonable prospect that petitioners will be able to recoup from them costs wrongfully paid out