**UNITED STATES of America, Appellee,**

v.

**Ronald Craig HORR, Appellant.**

**No. 91–3091.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 14, 1992.

Decided May 11, 1992.

Thomas E. Johnson Minneapolis, Minn., argued, for appellant.

Richard George Morgan Minneapolis, Minn., argued (Thomas B. Heffelfinger and Richard G. Morgan, on the brief), for appellee.

Before ARNOLD, Chief Judge, HEANEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

ARNOLD, Chief Judge.

Ronald Craig Horr appeals his convictions for conspiring to possess a firearm in a prison and to escape in violation of 18 U.S.C. §§ 1791(a)(2), 751(a), and 371; attempting to possess a firearm in a prison in violation of 18 U.S.C. § 1791(a)(2); and attempting to escape from prison in violation of 18 U.S.C. § 751(a). We affirm.

In May of 1990, authorities sent Horr to the Federal Medical Center (FMC) in Rochester, Minnesota, to undergo a psychological evaluation. During Horr's stay at FMC, he and at least two other inmates, Arden Archer and Robert Goldstein, began to plan their escape. The plan included using a gun and taking hostages. Without his accomplices' knowledge, Archer reported the escape plan to the Federal Bureau of Investigation.

On May 24, Archer put Goldstein in contact with an undercover FBI agent, Grant Beise, who agreed to help the inmates buy a gun and help smuggle it into FMC. Goldstein arranged with Agent Beise to buy a handgun and ammunition for $500. Beise agreed to put the gun in a shaving kit and throw it over the FMC fence in the early morning hours of May 25. Goldstein told Beise that a person in St. Louis would wire the $500 to him. In the meantime, Horr telephoned Kevin Voney in St. Louis. Voney agreed to wire Agent Beise the $500. These telephone conversations were recorded pursuant to the Bureau of Prisons' policy of recording all inmate telephone calls, except those between inmates and their attorneys.

In the early morning hours of May 25, with FBI and FMC personnel watching and videotaping the events, federal agents threw a shaving kit which appeared to contain a gun and ammunition over the FMC fence. Goldstein and Horr approached the kit a couple of times without picking it up. Finally, Goldstein and Archer retrieved the kit, with Goldstein stuffing it into his shirt. At that time, the agents seized both Goldstein and Horr.

On July 11, 1990, a grand jury returned a three-count indictment against Horr for his role in the attempted escape. Before trial, he filed a motion to suppress the recordings of his telephone conversations as having been obtained in violation of his Fourth Amendment rights and Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2521. After conducting a hearing, the magistrate judge[1] recommended denying the motion to suppress. The District Court[2] adopted the magistrate judge's recommendation. After a three-day trial, the jury convicted Horr on all three counts. The District Court sentenced him to fifty-seven months' imprisonment on each count, to be served concurrently, a $150 special assessment, a $350 fine, and three years of supervised release. This appeal followed.

Horr attacks his conviction on two grounds. First, he claims that the District Court erred in denying his motion to suppress the tapes of his telephone conversations. Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2521, generally prohibits the recording of oral or wire communications

---

1. The Hon. Franklin T. Noel, United States Magistrate Judge for the District of Minnesota.

2. The Hon. Diana E. Murphy, United States District Judge for the District of Minnesota.

without a warrant and prohibits admission of such recordings into evidence, unless a specific exception to the Act applies. Horr claims no exceptions to the warrant requirement of Title III applied to the Bureau of Prisons' taping of his conversations. The District Court disagreed, concluding that 18 U.S.C. § 2510(5)(a)(ii) provided such an exception. That section authorizes recording of telephone conversations when "an investigative or law enforcement officer" does so "in the ordinary course of his duties[.]" Since the FMC regularly records all inmate telephone conversations—except those between inmates and their attorneys—the Court concluded the recording was done by "an investigative officer" in "the ordinary course."

Although the District Court did not err in denying the motion to suppress, we affirm its decision on a different ground. Under 18 U.S.C. § 2511(2)(c), it is not unlawful for law enforcement officials "to intercept a wire, oral, or electronic communication, where ... one of the parties to the communication has given prior consent to such interception."

■ Horr impliedly consented to the taping of his telephone conversations. Upon entering FMC, all prisoners are given an admission and orientation handbook which indicates that inmate telephone calls are monitored and recorded. Inmates are also told about this policy at orientation. Although Horr claimed at the suppression hearing that it was not his signature—testimony that the magistrate judge did not find credible—Horr signed a form indicating that he was aware of the telephone policy. Moreover, Horr testified that he had seen signs posted near the telephones which state: "The Bureau of Prisons has the authority to monitor conversations on this telephone. Your use of the institutional telephone constitutes consent to this monitoring. A properly placed telephone call to an attorney is not monitored." [3]

Horr argues that he did not consent to the taping because he had no choice concerning whether he wanted to have his calls monitored. We disagree. Horr was aware of the telephone monitoring policy. It was his choice to use the telephone to conduct his illegal business. Having gambled by discussing his escape on the prison telephone, Horr cannot now be heard to complain that he lost.

■ Horr's second argument on appeal is that the District Court erred in refusing his jury instruction on the defense of coercion or duress. He proposed the following instruction:

If the defendant participated in the crimes charged in ... the indictment only because he reasonably feared that immediate, serious bodily harm would be inflicted upon him, if he did not participate in the crime, and if the defendant had no reasonable opportunity to avoid the harm, then he was coerced.

The District Court rejected this instruction not because it was a misstatement of the law of coercion or duress, but because Horr presented insufficient evidence to justify giving the instruction. The Court held that he did not demonstrate that he had "no reasonable opportunity to avoid the harm."

Horr acknowledges that he had the burden of producing sufficient evidence to justify the instruction. See, e.g., United States v. Campbell, 609 F.2d 922, 924 (8th Cir.1979), cert. denied, 445 U.S. 918, 100 S.Ct. 1282, 63 L.Ed.2d 604 (1980). He claims that he met this burden. We disagree. Both he and Goldstein testified that Archer threatened to kill Horr if he did not come up with $500 to buy the gun. Archer's connection to two prison groups—Posse Comitatus and Aryan Nation—led Horr to believe that Archer could carry out the threats. Horr admitted that he did not try to report the threats to prison authori-

3. It is unclear on what grounds or to what extent Horr still maintains his Fourth Amendment claim. In an overabundance of caution, we address it briefly. In view of Horr's admitted knowledge of the Bureau of Prisons' policy of recording inmate telephone conversations, we agree with the magistrate judge that he had no expectation of privacy concerning the content of his telephone conversations. Consequently, the taping did not violate his Fourth Amendment rights.

ties, but stated that if he had done so, he would have been labelled a "snitch." Given Archer's connections, Horr claimed the authorities could not have protected him anywhere in the federal prison system. This testimony indicates that Horr presented sufficient evidence of fear of serious bodily harm. We agree with the District Court, however, that fear of being labelled a "snitch," without more, is inadequate to demonstrate that defendant had no reasonable opportunities to avoid the harm. The District Court's refusal to instruct the jury on Horr's defense of coercion or duress was not erroneous.

Ronald Craig Horr's convictions are affirmed.