# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1996MN

_____

United States of America,

        Appellee,

v.

Russell Edward Eggleston,

        Appellant,

\*
\*
\*
\*  On Appeal from the United
\*  States District Court
\*  for the District of
\*  Minnesota.
\*
\*
\*

_____

Submitted:  October 20, 1998

Filed:  January 13, 1999

_____

Before BOWMAN, Chief Judge, BRIGHT and RICHARD S. ARNOLD, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

Russell Eggleston was convicted after a jury trial of possession of crack cocaine with the intention of distributing it, in violation of 21 U.S.C. § 841(a)(1). He was sentenced to thirty years in prison, to be followed by ten years on supervised release. A special assessment of $100.00 was also imposed. Although the sentence is very long (it was in fact at the bottom of the Guidelines range applicable in this case (360 months to life)), no question is raised on appeal with respect to the sentence. (Defendant was a career offender and therefore subject to enhanced punishment under U.S.S.G.

§ 4B1.1.)  Instead, Mr. Eggleston makes three arguments for reversal, two having to do with the admission of evidence at the trial, and one claim of prosecutorial misconduct during the closing argument.  We affirm the conviction.

A brief statement of important facts will suffice.  The defendant was arrested on the morning of July 27, 1997, by two Minneapolis police officers.  He was driving a Ford Taurus.  He had one passenger, Zachary Robinson.  The trunk of the car was locked, but, after a search warrant was obtained, the trunk was opened, and 185 grams, about seven ounces, of crack were found.  The principal theory of defense was that the crack belonged to Robinson, not Eggleston, and that Eggleston did not know that the crack was in the trunk.

We shall first discuss defendant's argument that it was error to admit in evidence against him the fact that six years previously, in 1991, he had been arrested with 39 individually wrapped packages of cocaine and a scale in his car.  He was convicted of possession with intent to distribute in connection with this arrest.  The government asserts that the evidence was relevant to prove knowledge, which, under Fed. R. Evid. 404(b), is one of the reasons that can justify evidence of prior bad acts or offenses.  If Eggleston's defense in the present case had been that he thought the cocaine was foot powder, or some other substance, the fact that he had previously possessed cocaine with the intention of distributing it would certainly be relevant, because it would tend to show that he knows what cocaine is and could not plausibly be thought to have mistaken it for some innocent substance.  This, however, was not Eggleston's defense.  His theory was simply that the cocaine belonged to Robinson, not to himself, and that, indeed, he did not even know that the cocaine was in the trunk.  In this situation, we see no relevance whatever in the previous incident, and we think it was error to allow the jury to hear about it.  The case against Mr. Eggleston, however, was very strong, including damaging admissions out of his own mouth, which we shall shortly describe, and therefore the error was, in our judgment, harmless.

After his arrest, Mr. Eggleston was placed in the Anoka County jail, where he was detained without bail. He was given, and signed, a writing containing an "inmate telephone system notice." This writing warned him that "[p]hone calls made on these telephones [the ones in the jail] are subject to monitoring and recording," except for calls made to an inmate's attorney. The phones were for collect calls only. The form continued, "when you choose to make a collect call using one of these telephones, you are consenting to the monitoring or recording of the telephone conversation." Mr. Eggleston's signature appears immediately below the following line: "I have reviewed and understand the above information."

A number of calls made by Eggleston from the jail were monitored, recorded, and introduced in evidence against him at the trial. During these calls, the defendant admitted, among other things, the following: he was afraid that Robinson would speak to the police; he, Eggleston, had taken seven ounces of crack cocaine from a man named Eaton; at the time the police stopped the Taurus, Eggleston had reached down to make sure that the trunk-lock button was depressed, so the police could not get access to the trunk (no key being available); and, again, Eggleston had possessed "Seven. I got seven," a clear reference to the seven ounces of crack found in the trunk.

The argument pressed on appeal is that it was a violation of the Fourth Amendment to allow the use in evidence of these recorded telephone conversations. The defendant concedes that he agreed to the recording and monitoring of the calls, but argued that he did not consent to their use in evidence against him. We do not think that the loaf can be sliced so thin. If someone agrees that the police may listen to his conversations and may record them, all reasonable expectation of privacy is lost, and there is no legitimate reason to think that the recordings, like any other evidence lawfully discovered, would not be admissible. See United States v. Horr, 963 F.2d 1124, 1126 (8th Cir.), cert. denied, 506 U.S. 848 (1992).

Defendant's third argument relates to an incident that occurred during the closing argument to the jury. After Eggleston's arrest, the police released the passenger, Robinson. Shortly thereafter, the people from whom Eggleston had taken the cocaine found Robinson and beat him up, believing that he, rather than Eggleston, might be the thief. During defense counsel's closing argument, this incident was discussed. Counsel pointed out to the jury that the government, during Robinson's direct testimony, had not brought up the beating. (It was part of Eggleston's theory that Robinson, intimidated by the beating, decided to incriminate Eggleston, when in fact it was Robinson himself who had stolen the cocaine.) Government counsel then responded that he had not brought up the beating during the direct examination of Robinson because the District Court had instructed him not to. Defendant now argues that no such instruction had been given, and that, by making this reply in front of the jury, the government misrepresented the truth and told the jury something not supported by the evidence.

We do not find the record entirely clear on the point of what the District Court intended with respect to the order of proof on the issue of the beating. There was considerable discussion of the matter before the trial began. Counsel for the government says he understood the Court as prohibiting reference to the issue unless the door to it was somehow opened, or until a later point in the trial. This was not, in our view, an unreasonable interpretation on the part of the government, and certainly government counsel was not guilty of bad faith in making the reply that he did. In any event, we do not think this sort of lawyers' squabble is of much importance to the question of guilt or innocence, or to the jury's consideration of that question. Lawyers in the heat of trial sometimes attribute inordinate significance to small tactical choices, such as whether to bring up a subject on direct examination, or wait until later in the trial. The question of the beating was sure to come up at some point, because it was referred to during Eggleston's tape-recorded conversations. Whether the government brought it up during direct examination of Robinson, or at some later time, is not of great significance. We do not find any misconduct on the part of counsel for the

government here, nor do we think that the disagreement between counsel during closing argument had any significant effect on the jury.

In addition, the District Court[1] gave a curative instruction, saying:

> Well, I'm going to overrule the objection. Members of the jury, I don't want you to get confused by this kind of argument, but the facts are what you find they are from the testimony that you have heard.
>
> * * *
>
> Again, I am going to overrule the objection. Again I remind the jury that it's up to you to determine what the facts are. The way that the case has been handled is something that is not really relevant to you. You are going to take all of the facts that have been proven to you by all of the evidence, and determine what those facts are and rely on those facts.

IV. Tr. 49. We think the District Court put it exactly the right way.

Affirmed.

---

[1]The Hon. David S. Doty, United States District Judge for the District of Minnesota.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.