**UNITED STATES of America,**
**Appellee,**

v.

**Michael HATCHER, Appellant.**

**United States of America, Appellee,**

v.

**Joseph Anthony Porrello, Appellant.**

United States of America, Appellee,

v.

Angelo Porrello, Appellant.

Nos. 02–1308, 02–1701, 02–1704, 02–1709, 02–1710, 02–1722, 02–1723, 02–2068 and 02–3582.

United States Court of Appeals, Eighth Circuit.

Submitted: Jan. 13, 2003.

Filed: March 24, 2003.

Victor B. Peters, argued, Kansas City, MO, for appellant Hatcher.

David B.B. Helfrey, argued, St. Louis, MO, for appellant Joseph Porrello.

James R. Wyrsch, argued, Kansas City, MO (J. Justin Johnston and David A. Kel-

ly, on the brief), for appellant Angelo Porrello.

Paul S. Becker, argued, Asst. U.S. Atty., Kansas City, MO, for appellee.

Before BOWMAN, RICHARD S. ARNOLD, and BYE, Circuit Judges.

RICHARD S. ARNOLD, Circuit Judge.

This case involves the convictions of Michael Hatcher, Angelo Porrello, and Joseph Anthony Porrello on charges stemming from the armed robberies of jewelry stores in the Kansas City area. Appellants were convicted of charges including conspiracy, interference with interstate commerce by armed robbery, the use of a firearm during a crime of violence, attempted money laundering, and criminal forfeiture. On appeal, appellants raise numerous claims. Chief among these claims are that the link between their crimes and interstate commerce was insufficient to justify their convictions, the Porrellos' argument that they were entitled to a lesser-included-offense instruction, and Angelo Porrello's challenge to the forfeiture order against him. We reject all but one of appellants' claims as without merit. As to that one claim—having to do with taped recordings of certain conversations in prison—further proceedings in the District Court will be necessary.

## I.

A career criminal by the name of Clarence Burnett organized a group of robbers who successfully robbed numerous jewelry stores. The identities of his fellow robbers changed from robbery to robbery, with Michael Hatcher participating in two of the robberies. In each robbery, a group of men entered the jewelry store with at least one gun drawn and proceeded to ransack the jewelry cases. The robbers then would proceed back to Mr. Burnett's home, where they would inspect their haul. In each case, Mr. Burnett took the jewels to J's Pawnshop, operated by Angelo and Joseph Porrello, to fence the jewels to the Porrellos. According to the evidence at trial—which came primarily through the testimony of Clarence Burnett himself—the Porrellos were involved not only in the fencing of the jewelry but also in the planning of the robberies themselves, by, for instance, providing guns, bulletproof vests, and jewelry-store floor plans for the robberies. The Porrellos allegedly were motivated by the need to stock a new jewelry store owned by Joseph Porrello and a man named Ed Sandridge.

Mr. Burnett eventually confessed these crimes to the authorities in an attempt to get a lighter sentence in an unrelated case. The government then sought and received an indictment against all of the alleged robbers. Later, the government sought and received a fifteen-count superseding indictment which included the Porrellos. Mr. Hatcher was charged with conspiracy, 18 U.S.C. § 371, two counts of interfering with interstate commerce by armed robbery, 18 U.S.C. § 1951, and two counts of the use of a firearm during a crime of violence, 18 U.S.C. § 924(c). The Porrellos were each charged with one count of conspiracy, 18 U.S.C. § 371, three counts of interfering with interstate commerce by armed robbery, 18 U.S.C. § 1951, three counts of the use of a firearm during a crime of violence, 18 U.S.C. § 924(c), three counts of attempted money laundering, 18 U.S.C. § 1956(a)(1)(B)(i), and a count of criminal forfeiture arising out of the money-laundering count, 18 U.S.C. § 982, 21 U.S.C. § 853(p).

At trial, the majority of the evidence came from cooperating co-conspirators in exchange for reduced sentences. The evidence against Mr. Hatcher consisted primarily of Mr. Burnett's testimony against

him, although that testimony was corroborated by independent sources, including phone records of conversations that took place after the robbery. There was substantial evidence indicating that the Porrellos acted as the fences for the jewelry. The only evidence directly linking the Porrellos to the planning of the crime, on the other hand, came either from Mr. Burnett on the witness stand or through other witnesses relating what Mr. Burnett had told them at the time of the robberies.

The jury convicted Mr. Hatcher on all five counts. The District Court sentenced him to a total term of 510 months' imprisonment and 3 years of supervised release. Three hundred months of his sentence were the result of two mandatory consecutive sentences for the two counts of the use of a firearm during a crime of violence. The judge imposed a consecutive 60–month sentence for the first count and a consecutive 240–month sentence for the second count. The Court also entered a restitution order against Mr. Hatcher in the amount of $1,341,217.06. The Porrellos were each convicted of the charges stemming from two of the robberies but acquitted of one count of interfering with interstate commerce by armed robbery and one count of the use of a firearm during a crime of violence. Joseph Porrello was sentenced to 421 months' imprisonment and 3 years' supervised release. As with Mr. Hatcher, three hundred of these months were due to mandatory consecutive sentences on the firearms charges. The Court also entered a restitution order against him in the amount of $2,417,903.11.

Angelo Porrello was sentenced to 468 months' imprisonment and 3 years' supervised release. Again, three hundred months were due to the firearms charges. The Court likewise ordered restitution in the amount of $2,417,903.11. The Court also entered a criminal forfeiture order against Angelo Porrello. Because the stolen jewelry was no longer available, the Court ordered the forfeiture of substitute assets.

## II.

Appellants raise numerous issues on appeal. With one exception, we conclude that each of these issues is without merit.[1]

## A.

Appellants argue that the convictions on certain counts were erroneous either because the government did not prove a sufficient link to interstate commerce or because the District Court did not adequately instruct the jury as to the necessity of finding a sufficient link to interstate commerce. Mr. Hatcher, for example, argues that, in light of the Supreme Court rulings in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), and *United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), the evidence linking the robberies to interstate commerce was insufficient. Each of the appellants likewise argues that there was instructional error regarding the necessary link to commerce. We reject these arguments. There was overwhelming

---

1. We address only some of these issues in this opinion. The issues not addressed were thoroughly considered and are likewise rejected as without merit. They include Mr. Hatcher's challenge to the sufficiency of the evidence against him, Joseph Porrello's challenge to the sufficiency of the evidence against him (and the judge's refusal to order a new trial based upon insufficient evidence), a challenge to the propriety of the Court's sentencing decision on one of the firearm counts, Angelo Porrello's argument that the Court erred in refusing to compel a witness to take the stand after pleading the Fifth Amendment, and a challenge to the Court's exclusion of certain testimony as hearsay.

evidence to show that the robberies substantially affected interstate commerce.

Appellants strongly urge that the government was required to prove that the jewelry stores were actively engaged in interstate commerce at the time of the robberies to satisfy its burden of proof. One case cited repeatedly for this proposition is *United States v. Peterson*, 236 F.3d 848 (7th Cir.2001). This case does not support the proposition, however. In *Peterson*, the Seventh Circuit held that the government need prove only a *de minimis* effect on interstate commerce, and stated "[t]raditionally, the government meets the de minimis standard under the 'depletion of assets' theory. The government presents evidence that a business is *either* actively engaged in interstate commerce *or* customarily purchases items in interstate commerce, and has its assets depleted by the robbery, thereby curtailing the business' potential as a purchaser of such goods." *Id.* at 854 (emphasis added). Nothing in the opinion indicates that it was meant as an exhaustive list of the methods that the government could use to prove a link to interstate commerce: it was merely illustrative.

■ Even if *United States v. Peterson* did stand for the proposition asserted by appellants, we would be forced to reject it, because our Court's precedents do not require the government to prove that the business was actively engaged in interstate commerce at the time of the robbery. In *United States v. Vong*, 171 F.3d 648 (8th Cir.1999), we held that proof that a jewelry store bought and resold jewelry partially manufactured out-of-state was sufficient to conclude that robbing that store substantially affected interstate commerce. *Id.* at 654. Thus, in this case, the government did not need to prove that the stores were actively engaged in interstate commerce at the time of the robbery, only that they

customarily purchased goods in interstate commerce, and that the robberies affected this practice.

■ In this case, there was uncontroverted evidence that the victimized jewelry stores regularly purchased jewelry in interstate commerce. Indeed, each store owner testified that at least some of the jewelry that was stolen was purchased from out of state. Moreover, in each case, the store owner testified that he replaced the stolen jewelry through out-of-state vendors. Thus, there was sufficient evidence to demonstrate that the robberies substantially affected the flow of goods in interstate commerce. We therefore reject appellants' arguments about the sufficiency of the evidence on and propriety of the jury instructions about the counts of interference with interstate commerce by armed robbery.

■ The Porrellos also argue that their convictions on the attempted-money-laundering counts should be overturned because the District Court gave a legally erroneous jury instruction. The District Court did, indeed, give a legally erroneous instruction insofar as the instruction allowed the jury to convict the Porrellos without finding an actual link to commerce in this case. Since the trial of this case, we have found the instruction erroneous. *United States v. Evans*, 272 F.3d 1069 (8th Cir.2001). Because the Porrellos did not object to this instruction at trial, however, we can review it only for plain error. *Id.* at 1080. This Court will "reverse only if there is an error that is obvious and that affects a defendant's substantial rights," and "we should not exercise our discretion to correct forfeited error 'unless the error seriously affects the fairness, integrity, or public reputation of the judicial proceeding.'" *Ibid.*, quoting *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

We do not believe that the instructional error substantially affected the fairness, integrity, or public reputation of this proceeding. There was extensive evidence linking the crimes to interstate commerce. The attempted-money-laundering counts were linked to interstate commerce because they were based upon the Porrellos' purchase of the stolen jewelry. As discussed above, the robberies themselves substantially affected interstate commerce by depleting the jewelry stores' assets. The money-laundering counts were tightly bound up with the robberies because they are based upon the fact that the Porrellos laundered the proceeds of the robberies. These crimes were, thus, part of an ongoing scheme that clearly affected commerce. On these facts, we cannot conclude that the erroneous jury instruction so far affected the appellants' substantive rights so as to constitute plain error. We therefore reject their arguments.

### B.

The Porrellos additionally argue that the District Court erred in refusing to instruct the jury on the possibility that they were merely accessories after the fact to the robberies. The Porrellos requested an instruction that would have allowed the jury to convict them of being an accessory after the fact while acquitting them of the substantive crimes. The indictment did not charge them with being an accessory, but they maintained that they were entitled to the instruction on the grounds that being an accessory is a lesser-included offense of the substantive crimes with which they were charged. The District Court refused to give such an instruction after concluding that being an accessory after the fact was not an "included" offense.

■■■ "[A] defendant is entitled to a jury instruction if the request is timely, the evidence supports the instructions, and

the proffered instruction correctly states the law." *United States v. Sanders*, 834 F.2d 717, 719 (8th Cir.1987). In this case, the Court properly rejected the proffered instruction because it misstated the law. The instruction was premised upon the assumption that being an accessory is a lesser-included offense of the substantive crimes charged. This assumption is incorrect. To be a lesser-included offense, a crime must not require the government to prove any additional elements. *Schmuck v. United States*, 489 U.S. 705, 716–21, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (adopting the common-elements test for lesser-included offenses). This means that being an accessory after the fact is not a lesser-included offense, as it requires the government to prove an additional element—that the defendant gave aid or comfort to the criminals after the crime was committed. *United States v. Barlow*, 470 F.2d 1245, 1252 (D.C.Cir.1972); 18 U.S.C. § 3. Because this is not an element of any of the underlying crimes with which the Porrellos were charged, they were incorrect in asserting that being an accessory after the fact was an included offense. Thus, their proffered jury instruction was legally erroneous. The District Court correctly refused to give it.

### C.

■■■ Additionally, Angelo Porrello challenges the forfeiture order against him. First, he argues that the indictment was legally insufficient because it did not allege with specificity what substitute assets the government would attempt to seize in lieu of the stolen jewelry. Mr. Porrello did not object to the indictment before trial, so we will overturn his conviction only if the indictment "is so defective that by no reasonable construction can it be said to charge the offense." *United States v.*

*White,* 241 F.3d 1015, 1021 (8th Cir.2001) (internal quotations and citations omitted).

■ The indictment sufficiently pleaded facts to make out a case for criminal forfeiture. In *United States v. Possick,* this Court explained that to plead a forfeiture adequately, the government must set forth the property subject to forfeiture with enough particularity for the defendant to marshal evidence in his defense. 849 F.2d 332, 340–41 (8th Cir.1988). Thus, the indictment must usually identify the specific instrumentalities or proceeds of crime that the government alleges are forfeitable under 18 U.S.C. § 982, so that the defendant can effectively challenge whether the specific property was an instrumentality or product of crime. In this case, the indictment met this standard: it specified that the government would seek forfeiture of all property stolen from the jewelry stores.

■ This case was more complicated because the Porrellos no longer possessed the stolen jewelry. Thus, the government invoked 21 U.S.C. § 853(p), which allows it to seek the forfeiture of any substitute assets if the property subject to forfeiture under § 982 is no longer available. Section 853(p) provides that where the government proves that it was entitled to forfeiture, but the specific property is no longer available, the district court shall order the forfeiture of substitute assets. The defendant cannot challenge the forfeiture of such substitute assets on the basis of their identity; their specific identity does not matter for forfeiture purposes. He can challenge only the underlying charge that the government is entitled to a forfeiture under § 982. The defendant does not need to know the identity of the substitute assets to marshal a defense to the forfeiture. Accordingly, *Possick* does not require that the indictment specify what property will be sought as substitute assets. Therefore, the indictment was sufficient in this case.

Angelo Porrello also argues that the District Court lacked jurisdiction to amend its judgment to enter a forfeiture order against him. The jury convicted Mr. Porrello on March 7, 2001. On August 2, 2001, the District Court entered a preliminary forfeiture order pursuant to Federal Rule of Criminal Procedure 32.2. On January 11, 2002, the judge formally announced Mr. Porrello's sentence without mentioning the forfeiture order. The formal sentence was committed to writing on January 16, again with no mention of the forfeiture. The government promptly moved for a correction of this judgment, which the District Court granted on April 9, 2002. Angelo Porrello argues that the District Court lacked jurisdiction to amend its ruling in this way.

■ A judge has plenary power to amend a final order in a criminal case for seven days. Fed.R.Crim.P. 35. That power is not involved in this case, because the amendment came well beyond seven days. After seven days, the court retains the power only to correct clerical errors. Fed. R.Crim.P. 36. Mr. Porrello argues that adding a forfeiture order constitutes more than a correction of a clerical error. If the judge had never before addressed the forfeiture issue, we might agree with Mr. Porrello. In light of the Court's earlier entry of a preliminary forfeiture order, however, we conclude that the omission did constitute a clerical error. See *United States v. Loe,* 248 F.3d 449 (5th Cir.2001) (holding that a judge who failed to include a final forfeiture order in the formal written sentencing could amend that judgment as a clerical error when he had already entered a preliminary forfeiture order and indicated at the sentencing hearing that he would include that order in the judgment). Because the error was clerical, the District

Court retained jurisdiction to correct it. We thus find no error in the District Court's entry of the forfeiture order.

## D.

Finally, Angelo Porrello argues that the District Court erred in refusing to order the government to turn over tapes of conversations between the cooperating co-conspirators and their attorneys. These conversations took place while the co-conspirators were incarcerated, and the parties to these conversations were aware that they were being recorded by the prison. The District Court ruled that these tapes were protected by the attorney-client privilege and therefore would not order their disclosure to the defendants. The government defends the District Court's decision on the ground that "the 'defendants failed to establish a factual record to support the argument that the attorney-client privilege had been waived.'" Brief of Appellee 57 (quoting Dist. Ct. Order Denying New Trial p. 8 (Sept. 5, 2001)).

 We respectfully disagree. The presence of the prison recording device destroyed the attorney-client privilege. Because the inmates and their lawyers were aware that their conversations were being recorded, they could not reasonably expect that their conversations would remain private. The presence of the recording device was the functional equivalent of the presence of a third party. These conversations were not privileged. See e.g., *Fisher v. Mr. Harold's Hair Lab, Inc.*, 215 Kan. 515, 519, 527 P.2d 1026, 1030 (1974) (stating that conversations are privileged

only when made outside the presence of third parties); *Lipton Realty, Inc. v. St. Louis Housing Authority*, 705 S.W.2d 565, 570 (Mo.App.1986) (stating that the attorney-client privilege is waived when the client voluntarily shares the communications with third parties). The very existence of the tapes, which were made by and are now in the custody of the United States, was factually sufficient to demonstrate that the co-conspirators waived the attorney-client privilege.

We conclude that the District Court erred in refusing to order the disclosure of the taped conversations on the ground that they were privileged. Because the tapes were never disclosed to the Court or to the defendants, we do not know what was said. We therefore cannot assess whether defendants were prejudiced by the non-disclosure. Thus, we remand the case to the District Court to consider what effect, if any, the disclosure would have had on this prosecution. This will provide the government with the opportunity to argue that the non-disclosure of the tapes was harmless error.

 We reject the bulk of appellants' arguments as without merit. The case must be remanded, however, for further proceedings with respect to the tape-recorded conversations. On remand, the District Court should conduct proceedings consistent with this opinion to determine whether the error was prejudicial. This panel retains jurisdiction to consider the result of that inquiry, which we ask the District Court to certify to us when it has reached a conclusion.[2]

---

2. In general, the attorney-client privilege is personal and cannot be asserted by anyone other than the client. See *United States v. Fortna*, 796 F.2d 724, 732 (5th Cir.1986), cited with approval in *United States v. Escobar*, 50 F.3d 1414, 1422 (8th Cir.1995). In this case, the United States is asserting the co-defendants' attorney-client privilege as a defense to the request for disclosure of the tapes. On remand, if the District Court deems it appropriate, it may allow the parties to pursue the issue of the government's stand-

BYE, Circuit Judge, concurring.

I agree with the majority opinion except for its conclusion that the cooperating co-conspirators necessarily waived the protections afforded by the attorney/client privilege simply because conversations with their attorneys were tape recorded.

We have previously held that inmates impliedly consent to having their telephone conversations taped when they know a policy of recording all inmate telephone calls exists. *See United States v. Eggleston,* 165 F.3d 624, 626 (8th Cir.1999); *United States v. Horr,* 963 F.2d 1124, 1126 (8th Cir.1992). These same cases, however, recognize that such policies specifically exempt telephone calls made to attorneys. *Eggleston,* 165 F.3d at 626 (referencing a county jail policy excepting calls made to inmates' attorneys from the jail's monitoring policy); *Horr,* 963 F.2d at 1125 (referencing the Bureau of Prison's policy of recording all inmate telephone calls, except those between inmates and their attorneys). Because the record in this case does not show whether a similar policy existed or whether the co-conspirators knew of its existence, we have insufficient information to conclude the privilege was waived.

I recognize the attorney/client telephone calls at issue may have been placed without following the procedures necessary to protect their confidentiality. If so, the co-conspirators may well have waived any protections afforded by the privilege. There is, however, insufficient information in this record to satisfy me such was the case. Therefore, I cannot agree with the majority's conclusion that the privilege was waived simply because the conversations were taped.

Despite these concerns with the majority holding, I agree the district court

should have allowed the defendants access to the tapes because the government lacks standing to lay claim to the co-conspirators' attorney/client privilege. The attorney/client privilege is personal in nature and cannot be asserted vicariously. *See United States v. Fortna,* 796 F.2d 724, 732 (5th Cir.1986); *cf. United States v. Ortega,* 150 F.3d 937, 942 (8th Cir.1998) (indicating the government lacks standing to assert a co-operating defendant's attorney/client privilege); *United States v. Escobar,* 50 F.3d 1414, 1422 (8th Cir.1995) (holding a defendant's *Miranda* rights are personal and a co-defendant lacks standing to assert an alleged violation as a defense) (citing *Fortna,* 796 F.2d at 732). Because the government failed to establish any basis for asserting the co-conspirators' attorney/client privilege, the district court should have ordered disclosure of the taped conversations. *See Bouschor v. United States,* 316 F.2d 451, 456 (8th Cir. 1963) (holding that the party asserting the attorney/client privilege bears the burden of establishing it).

I am pleased to note the majority's remand suggests the district court may wish to consider additional briefing on the issue of the government's standing. I believe this matter should be resolved on that basis, and I encourage the district court to explore the issue more fully. Therefore, as to Part D of the majority's opinion, I concur only in the judgment.

ing by supplemental briefs, evidence, or otherwise.