**UNITED STATES of America,
Petitioner–Appellant–
Cross–Appellee,**

v.

**David A. ACKERT, Respondent–Appellee,**

Paramount Communications, Inc. (now Viacom International, Inc.), CPW Investments Ltd., CPW Holdings, Inc., Nieu Oranjestad Partnership, Nieuw Oranjestad Partnership and Maarten Investerings Partnership, Intervenors–Defendants–Appellees–Cross–Appellants.

Docket Nos. 97–6293, 97–6333.

United States Court of Appeals, Second Circuit.

Argued June 18, 1998.

Decided Feb. 26, 1999.

Kenneth W. Rosenberg, Washington, D.C. (Loretta C. Argrett, Assistant Attorney General, Washington, D.C.; Charles E. Brookhart, Department of Justice; John H. Durham, United States Attorney for the District of Connecticut, Of Counsel), for Petitioner–Appellant–Cross–Appellee.

Maria T. Vullo, New York, NY (H. Christopher Boehning and Lavatus V. Powell, III, Paul, Weiss, Rifkind, Wharton & Garrison, New York, NY, Of Counsel), for Intervenors–Appellees–Cross–Appellants.

David H. Braff and Michael W. Martin, Sullivan & Cromwell, New York, NY (On the Brief), for Respondent–Appellee.

Before: JACOBS and LEVAL, Circuit Judges, and MURTHA, Chief District Judge.*

* The Honorable J. Garvan Murtha, Chief District Judge of the United States District Court for the District of Vermont, sitting by designation.

LEVAL, Circuit Judge:

The United States of America appeals from a decision of the district court (William I. Garfinkel, *Magistrate Judge*) in a tax summons enforcement proceeding, barring the Internal Revenue Service from questioning Respondent David A. Ackert, an investment banker, about his conversations with Paramount Corporation's counsel, by reason of Paramount's attorney-client privilege. We reverse.

## BACKGROUND

The relevant facts are not in dispute. In 1989, Goldman, Sachs, and Co., an investment banking firm, approached Paramount with an investment proposal. The proposed transaction was expected to reduce Paramount's federal income tax liability by generating significant capital losses that would offset Paramount's recent capital gains from the sale of a subsidiary.

Ackert, at the time was employed by Goldman, Sachs.[1] Along with other Goldman, Sachs representatives, Ackert pitched the investment proposal to representatives of Paramount at an initial meeting on September 15, 1989.

After the September 15 meeting, Eugene I. Meyers, Paramount's senior vice president and tax counsel, conducted legal research and analysis in order to advise Paramount about the tax implications of the proposed investment. In the course of this research, Meyers contacted Ackert, and the two men had several follow-up meetings to discuss various aspects of the Goldman, Sachs proposal. Meyers initiated these discussions to learn more about the details of the proposed transaction and its potential tax consequences, so that he could advise his client, Paramount, about the legal and financial implications of the transaction.

Paramount ultimately decided to enter into the proposed investment, but used the services of another investment banker, Merrill Lynch & Co. Paramount paid Goldman,

Sachs a fee of $1.5 million for services rendered in connection with its proposal.

Seven years later, in 1996, the Internal Revenue Service was conducting an audit of Paramount and its subsidiaries for its 1989 through 1992 tax years. In connection with the audit, the IRS issued a summons to Ackert seeking his testimony about the 1989 investment proposal. Paramount asserted the attorney-client privilege with respect to questions concerning any conversations Ackert had with Meyers or in Meyers' presence.

The United States filed suit in the district court, seeking to enforce the summons through an order directing Ackert to appear before the IRS and answer its questions. By consent of the parties, the petition was referred to Magistrate Judge Garfinkel. Paramount intervened.

The magistrate judge granted the petition to enforce the IRS summons, but initially deferred ruling on the attorney-client privilege. The IRS agreed to question Ackert about the allegedly privileged communications in the magistrate's courtroom, so that Paramount could assert its objections and the judge could rule on them contemporaneously. Paramount objected to questions about the conversations between Ackert and Meyers subsequent to the initial September 15, 1989, meeting. The magistrate judge heard argument from Paramount and the United States, and conducted an *in camera* interview with Ackert about the substance of these conversations.

Following the *in camera* proceedings, the magistrate judge ruled in favor of Paramount, concluding that the government's inquiry into the Ackert–Meyers conversations "would invade privileged communications." The United States appeals from this ruling. Paramount also appeals from the order that enforced the summons directing Ackert's appearance.

The magistrate judge said little in explanation of his ruling, but had indicated earlier that if Meyers had been collecting in-

---

1. Although Ackert is an attorney, he functioned solely as an investment banker while at Goldman, Sachs. Although he discussed the possible

tax consequences of investments with potential clients, including Paramount, he did not provide them with legal or tax advice.

formation from Ackert about the proposed investment in order to give legal advice to Paramount, the conversations would be privileged. We understand that to be the basis of his ruling.

## DISCUSSION

■ Recognizing that the attorney-client privilege generally applies only to communications between the attorney and the client, and that Ackert was not Meyers's client, Paramount seeks to justify its assertion of the privilege by reference to Judge Friendly's opinion in *United States v. Kovel,* 296 F.2d 918 (2d Cir.1961). *Kovel* held that the privilege can protect communications between a client and his accountant, or the accountant and the client's attorney, when the accountant's role is to clarify communications between attorney and client. *See id.* at 922. If a client and attorney speak different languages, an interpreter could help the attorney understand the client's communications without destroying the privilege. *Kovel* recognized that an accountant can play a role analogous to an interpreter in helping the attorney understand financial information passed to the attorney by the client. *Id.*

Paramount contends that the Ackert–Meyers conversations mirror the accountant-attorney relationship described in *Kovel.* Paramount emphasizes that Meyers contacted Ackert seeking information about the details of the proposed investment for the sole purpose of providing legal advice to Paramount. It asserts that "it was impossible for Mr. Meyers to advise Paramount without these further contacts with Mr. Ackert, because he could not otherwise fully define the factual, and therefore legal, nature of the proposal." Paramount Br. at 21.

We respectfully disagree with both the magistrate judge's explanation for his ruling and with the argument offered by Paramount on appeal in support of the ruling.

■ We assume, as did the magistrate judge, that Meyers interviewed Ackert in order to gain information and to better advise his client Paramount. That, however, is insufficient to give rise to the privilege. The purpose of the privilege is "to encourage clients to make full disclosure to their attorneys." *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). To that end, the privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client. Thus, a communication between an attorney and client may be privileged even if it turns out to be unimportant to the legal services provided. *See* 8 *Wigmore on Evidence* § 2292, at 554 (McNaughton rev. ed.1961)(listing essential elements of privilege); Scott N. Stone & Robert K. Taylor, 1 *Testimonial Privileges* §§ 1.24–1.35 (2d ed.1995) (discussing scope of privilege). Conversely, a communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client. *See Hickman v. Taylor,* 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Colton v. United States,* 306 F.2d 633, 639 (2d Cir. 1962); 8 *Wigmore on Evidence* § 2317 at 619 ("It is ... not sufficient for the attorney, in invoking the privilege, to state that the information came somehow to him while acting for the client nor that it came from some particular third person for the benefit of the client.")(emphasis omitted). Accordingly, we reject the magistrate judge's explanation for extending Paramount's privilege to conversations between its counsel and an independent investment banker, notwithstanding our assumption that those conversations significantly assisted the attorney in giving his client legal advice about its tax situation.

■ We also reject Paramount's argument based on *Kovel.* That decision recognized that the inclusion of a third party in attorney-client communications does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communications between attorney and client. That principle, however, has no application to this case. Meyers was not relying on Ackert to translate or interpret information given to Meyers by his client. Rather, Meyers sought out Ackert for information Paramount did not have about the proposed transaction and its tax

consequences. Because Ackert's role was not as a translator or interpreter of client communications, the principle of *Kovel* does not shield his discussions with Meyers. We therefore find that Paramount has failed to demonstrate a basis for asserting its attorney-client privilege based on Meyers's communications with Ackert.

We do not preclude the possibility that, as the examination of Ackert proceeds, Paramount might demonstrate circumstances bringing some particular question or questions put to Ackert within the scope of Paramount's privilege. But we reject the magistrate judge's broad ruling that the entire examination of Ackert on his communications with Meyers is protected by Paramount's privilege.

We find no merit in Paramount's cross-appeal from the district court's order enforcing the summons.

### CONCLUSION

We affirm the magistrate judge's ruling granting enforcement of the IRS summons directed to Ackert. We reverse the ruling that questions put to Ackert concerning his communications with Meyers invade Paramount's attorney-client privilege.