10-2724-cr (L)
United States v. Rodriguez

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2010

(Argued: June 24, 2011                          Decided: August 25, 2011)

Docket Nos. 10-2724-cr(L), 10-3402-cr(CON)

_____

UNITED STATES OF AMERICA,

*Appellee,*

v.

CARLOS MEJIA,[*] JOEL RODRIGUEZ,

*Defendants-Appellants*,

JONATHAN MEJIA, aka MOISES, PEDRO VENTURA-CRUZ, aka EL TIBURON,

*Defendants.*

_____

Before: MINER, McLAUGHLIN, and POOLER, *Circuit Judges*.

Defendant-Appellant Joel Rodriguez ("Rodriguez") appeals from a judgment of

conviction entered on June 30, 2010, by Judge Denise Cote of the United States District Court

for the Southern District of New York, at the conclusion of a six-day jury trial. Rodriguez was

tried with co-defendant Carlos Mejia and found guilty of two counts of conspiracy with intent to

---

[*] Pursuant to Fed. R. App. P. 42, Docket Number 10-3402(CON) is closed with respect to Appellant Carlos Mejia.

1

distribute cocaine and one count of attempt to possess with intent to distribute cocaine, pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 846. On appeal, Rodriguez principally argues that the district court improperly admitted a portion of a recorded telephone call that he made while incarcerated, because he argues that the communication was protected by the attorney-client privilege. The admitted portion of the phone call included a recording of Rodriguez instructing his sister to tell his brother to tell his lawyer that he wanted to "cop out" to a plea before he was indicted. We hold that the district court did not err in finding that the communication was not made in confidence and that the attorney-client privilege did not apply.

Affirmed.

———————————

ROBIN C. SMITH, Law Office of Robin C. Smith, Esq., P.C., Brooklyn, NY, *for Defendant-Appellant Joel Rodriguez.*

AMIE N. ELY, Assistant United States Attorney, (Jesse M. Furman, Assistant United States Attorney, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for Appellee United States of America.*

POOLER, *Circuit Judge*:

Defendant-Appellant Joel Rodriguez ("Rodriguez") appeals from a judgment of conviction entered on June 30, 2010, by Judge Denise Cote of the United States District Court for the Southern District of New York, at the conclusion of a six-day jury trial. Rodriguez was tried with co-defendant Carlos Mejia and found guilty of two counts of conspiracy with intent to distribute cocaine and one count of attempt to possess with intent to distribute cocaine, pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 846. Rodriguez was sentenced to 96 months of imprisonment on each count, to be served concurrently, followed by five years of supervised release, and $200

2

in special assessments.[1]

On appeal, Rodriguez raises two objections to the district court's admission of part of a recorded phone call in which he asked his sister Francia to tell his brother to tell his attorney that he wanted to "cop out" to a plea before he was indicted. First, he argues that the district court erred in determining that the attorney-client privilege did not apply or, in the alternative, that Rodriguez had waived it. Second, he argues that the district court failed to consider whether the recorded conversation was admissible under Federal Rule of Evidence 410. Both arguments are unavailing.

## I.

Rodriguez was arrested on January 22, 2009, on the basis of a complaint charging him with conspiracy to distribute, or possess with intent to distribute, a controlled substance. On January 26, 2010, approximately one month before trial, the government filed a motion in limine for, among other things, permission to introduce at trial the recording of a telephone call that Rodriguez had made to his sister Francia on March 1, 2009, while Rodriguez was imprisoned at the Metropolitan Detention Center ("MDC").[2] During the call, which was conducted in Spanish, Rodriguez asked Francia to tell "Tito," their brother, to inform Rodriguez's lawyer that Rodriguez wanted to discuss whether he could "cop out" before the indictment.[3] Francia told

---

[1] On August 12, 2010, Carlos Mejia was sentenced to 151 months of imprisonment. Although he filed a notice of appeal, he thereafter submitted a motion to withdraw it, which this Court granted on October 7, 2010. Order, Dkt. 10-3402 (2d Cir.), Doc. 25 (entered Oct. 7, 2010).

[2] Rodriguez was detained at MDC for approximately two months after his arrest. On March 30, 2009, the district court released Rodriguez on bail.

[3] The parties stipulated that the recording was an accurate audio file of the conversation and that the transcript of the conversation was accurate as to the translation, date, time, and

Rodriguez that he should tell Tito tomorrow because she "forget[s] things like that." Rodriguez explained that "the sooner we talk to him [the lawyer], the better." He told Francia that a fellow inmate had explained that it was better to plead guilty before being indicted. Rodriguez further explained the effect of pleading guilty before being indicted, which was to decrease his sentence: "let's suppose, if I plead guilty to that complaint . . . that's five-to-40 [years] . . . so, it turns out to be just five years, a little over three years." Rodriguez then instructed his sister "to call the lawyer and tell him to, to call the prosecutor . . . [and] say that I wanna plead guilty to the complaint, that I accept the five-to-40."

In its motion, the government argued that this conversation was admissible because "a defendant's expression of a willingness to plead guilty is evidence of his consciousness of guilt," citing to case law outside of our Circuit. While the government acknowledged that "Rodriguez does not directly admit [to the charged conduct], his statements regarding his willingness to enter a plea, pre-indictment, indicate that he believes that he is guilty of narcotics-trafficking activity."[4] At a pre-trial conference held on January 28, 2010, Rodriguez argued that the recorded call was not admissible because the conversation concerned plea negotiations, and none of the cases cited by the government "involve[d] any real plea activity involving people that ha[d] the power to involve themselves in plea activity." Rodriguez did not contest the

_____

participants involved.

[4] We note that Rodriguez may have wanted to "cop out" using an *Alford* plea or a plea of nolo contendere, and for neither type of plea must the defendant admit guilt. *See, e.g.*, *Burrell v. United States*, 384 F.3d 22, 24 n.1 (2d Cir. 2004). We do not know which type of plea Rodriguez intended to enter. As Rodriguez did not challenge below or on appeal whether the substance of the call was indeed probative of guilt or whether its probative value outweighed its prejudicial value, *see* Fed. R. Evid. 401, 403, we need not decide the question here.

government's argument that his willingness to enter a plea was probative of guilt. Instead, Rodriguez argued "these are plea negotiations implicated by Federal Rules of Evidence 408 and 410." The court then indicated that it had a separate question regarding the communications—"whether or not that communication should be protected as attorney-client privilege communication, the sister acting as an agent, since the defendant isn't able to just walk into the attorney's office."

On January 29, 2010, Rodriguez filed a letter arguing that his phone call to his sister was protected by the attorney-client privilege. Rodriguez acknowledged that the privilege typically attaches only to a lawyer and his or her client. However, Rodriguez noted that the privilege may extend to include third parties if the communication "is made in confidence for the purpose of obtaining legal advice from the lawyer." He explained that the privilege has been applied where communications were made "through a hired interpreter, or one serving as an agent of either attorney or client to facilitate communication."

Here, Rodriguez argued, he was speaking to his sister, a close relative in whom he had a reasonable expectation of confidentiality, with a "message [that] was intended strictly for his lawyer." Moreover, Rodriguez noted that he "was imprisoned, and unable to contact [his lawyer] directly." Rodriguez emphasized that "[h]is only conceivable goal was to promptly facilitate plea discussions between his attorney and the Government." Given that, according to Rodriguez, disclosure to his sister was necessary to obtain informed legal advice, he argued that the attorney-client privilege applied and that the call should not be admitted into evidence.

The government responded the following day, arguing that the privilege did not apply because Rodriguez made statements to a third party—his sister—with knowledge that another

5

third party—the Bureau of Prisons ("BOP")—was recording the call. For the privilege to apply to Rodriguez's communication with his sister, the government argued that two elements must be satisfied: that Rodriguez had a reasonable expectation of confidentiality under the circumstances, and that disclosure to his sister was necessary in order to obtain legal advice. The government stated that in this case neither element was met. First, it argued that Rodriguez had no reasonable expectation that his phone call would be confidential because "inmates at BOP facilities are repeatedly informed that their calls are not private and may be recorded." Second, the government argued that Rodriguez's sister "was not a necessary intermediary" because "Rodriguez could have called his attorney just as easily as he called [his sister] had he wished to engage in privileged discussions with his attorney." Furthermore, insofar as Federal Rule of Evidence 410 was implicated, the government argued it did not apply because the Rule, by its terms, concerns only statements "made in the course of plea discussions with an attorney for the prosecuting authority," Fed. R. Evid. 410(4), and Rodriguez's sister was not related to the "prosecuting authority" in any way.

On the first day of trial, the district court granted the government's motion in limine and ruled that Rodriguez's call was admissible. The court stated that it initially had requested the parties to brief whether the "communication should be protected as attorney-client privilege communication, the sister acting as an agent, since the defendant isn't able to just walk into the attorney's office." At the hearing, however, the court explained that "the submissions that the government has given [], considered with the submissions from the defendants and their argument, [] suggest that the issue that [was] raised at the final pretrial conference does not govern here." Instead, the court based its conclusion that the privilege did not apply on two

6

principal findings: that Rodriguez was on notice that the call was being recorded and that he was represented by counsel at the time of the call. With regard to the first finding, the court stated that if such notice was disputed, it would accept further submissions on the issue. No submissions were provided, however, and Rodriguez concedes on appeal that he does not contest the assumption that he was on notice. With regard to the second finding, the court explained that the attorney-client privilege extends to third parties only where "that communication is [necessary] to assist the attorney in rendering advice to the client." The court found that this was not such a case, given that Rodriguez had counsel at the time of the call and "[t]here is no suggestion he couldn't call [his] counsel or was unable to communicate with him."

The court concluded that Rodriguez's "telephone call was not covered by the attorney-client privilege because there could be no reasonable expectation of confidentiality." The court underscored that "what is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer, and we have no showing to support such a finding."

## II.

### A. Standard of Review

The parties disagree as to what standard we should apply in reviewing the district court's ruling. Rodriguez argues that we are faced with a question of law and should apply de novo review. The government argues that we must decide only whether the attorney-client privilege applies and should therefore review the district court's determination for abuse of discretion. The government is correct.

We have repeatedly held that "[t]his Court reviews rulings on claims of attorney-client

7

privilege for abuse of discretion." *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 119 F.3d 210, 214 (2d Cir. 1997). There are, however, occasions where the attorney-client privilege raises a question of law, which we review de novo. For instance, "[t]he issue of the standard that governs an employee's claim of attorney-client privilege with respect to communications to corporate counsel on corporate matters . . . is one of law, which we therefore review de novo." *Id.* In general, "[a]lthough the applicability of a privilege is a factual question, determining the scope of a privilege is a question of law, subject to plenary review." *Id.* (internal quotation marks omitted). Accordingly, to determine the appropriate standard of review, we must establish whether the district court based its decision on a consideration of the application of the privilege to the communication or on an understanding of the privilege's scope.

As Rodriguez himself argues, the question in the instant case is whether Rodriguez "can be said to have waived the privilege by virtue of conveying information to his attorney, through his sister, on a recorded telephone line he knew was recording." While this is a question we have not yet squarely addressed, it is due to its factual, rather than legal, nature. That is, the question involves the application of the attorney-client privilege as our case law has already developed it to the novel set of facts before us; it does not require us to address the scope of the privilege itself in a novel way. Thus, we review the district court's decision for abuse of discretion. *See In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000) ("It is firmly established in this circuit that we review a district court's finding of waiver of the attorney-client . . . privilege[] for abuse of discretion."); *accord United States v. Adlman*, 68 F.3d 1495, 1499 (2d Cir. 1995) ("We review district court rulings on claims of attorney-client privilege . . . for

8

abuse of discretion.”).

"A district court has abused its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or rendered a decision that cannot be located within the range of permissible decisions." *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (internal citations, alterations, and quotation marks omitted). Following this standard, we hold that the district court did not abuse its discretion in finding that the attorney-client privilege did not apply.

B. Attorney-Client Privilege

The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice. *See In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007). The privilege's underlying purpose has long been "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). In order to balance this protection of confidentiality with the competing value of public disclosure, however, courts "apply [the privilege] 'only where necessary to achieve its purpose'" and "construe the privilege narrowly because it renders relevant information undiscoverable." *In re County of Erie*, 473 F.3d at 418 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). The party asserting the privilege, in this case Rodriguez, bears the burden of establishing its essential elements. *See von Bulow ex rel. Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987).

While as a general matter the attorney-client privilege applies only to communications

9

between lawyers and their clients, we have held that "[u]nder certain circumstances . . . the privilege for communication with attorneys can extend to shield communications to others when the purpose of the communication is to assist the attorney in rendering advice to the client." *Adlman*, 68 F.3d at 1499. We have, for instance, extended the application of the privilege to a communication between a client and an accountant, reasoning that "[a]ccounting concepts are a foreign language to some lawyers in almost all cases, and to almost all lawyers in some cases" and therefore that "the presence of the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961). Nevertheless, the extension has always been a cabined one, and "[t]o that end, the privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999).

Turning to the circumstances before us, it is well settled that individuals retain their attorney-client privilege when incarcerated or detained. *See United States v. DeFonte*, 441 F.3d 92, 94 (2d Cir. 2006). Moreover, we have indicated that the question of whether the privilege applies in this context continues to involve a determination of whether the claimant asserting the privilege "treated the [communications] in question in such a careless manner as to negate her [or his] intent to keep them confidential." *Id.* at 94-95; *see also In re Horowitz*, 482 F.2d 72, 82 (2d Cir. 1973) (noting generally that "[o]ne measure of the[] continuing confidentiality" of communications "is the degree of care exhibited in their keeping, and the risk of insufficient precautions must rest with the party claiming the privilege" (internal quotation marks omitted)). We have not, however, directly addressed the question of whether a prisoner's communication,

10

which the prisoner knows is being recorded by prison authorities, is covered by the attorney-client privilege.

The district court found that Rodriguez "was on sufficient notice that his telephone calls, including the telephone call with his sister, would be recorded." Accordingly, it concluded that the "telephone call was not covered by the attorney-client privilege because there could be no reasonable expectation of confidentiality." We agree with the district court that, on the basis of the undisputed fact that Rodriguez was aware that his conversation was being recorded by BOP, Rodriguez's disclosure to his sister of his desire to engage in plea discussions with his attorney was not made in confidence and thus constituted a waiver of the privilege.

Our sister Circuits agree. Courts that have been faced with the question have similarly decided that, where an inmate is aware that his or her calls are being recorded, those calls are not protected by a privilege. The Eighth Circuit, in *United States v. Hatcher*, 323 F.3d 666, 674 (8th Cir. 2003), held that "[t]he presence of the prison recording device destroyed the attorney-client privilege," reasoning that "[b]ecause the inmates and their lawyers were aware that their conversations were being recorded, they could not reasonably expect that their conversations would remain private." The *Hatcher* court explained that "[t]he presence of the recording device was the functional equivalent of the presence of a third party." *Id.* In the same vein, the Seventh Circuit ruled that the marital communications privilege does not survive where the communication took place during a recorded call from prison. *United States v. Madoch*, 149 F.3d 596, 602 (7th Cir. 1998) (holding that the marital communication privilege does not apply "where the spouse seeking to invoke the communications privilege knows that the other spouse is incarcerated," because it was unreasonable to expect such communication to be confidential

11

given "the well-known need for correctional institutions to monitor inmate conversations").

Rodriguez does not dispute that he was aware that the calls he made during his incarceration were being recorded. Instead, Rodriguez argues that the application of the waiver in his case "would discourage defendants from attempting to resolve cases with plea dispositions from jail, unless the defendant speaks with his attorney face to face or directly on an unmonitored telephone line." While his concern is undeniably valid in the abstract, it is not implicated here. BOP regulations expressly allow inmates to communicate with their attorneys via telephone and mail, without monitoring. *See, e.g.*, 28 C.F.R. §§ 540.18, 540.19 (directing that correspondence marked as "Special Mail," including legal correspondence, will be opened in the presence of the inmate and "may not be read or copied"); *id.* § 540.102 ("Staff may not monitor an inmate's properly placed call to an attorney."). Rodriguez could have availed himself of these venues of communication, and nothing in the record implies otherwise. We therefore rely on the government's assurances in reasoning that Rodriguez "just as easily" could have, and should have, contacted his attorney directly in order to preserve the confidentiality required by the privilege.

Accordingly, under these circumstances, Rodriguez cannot prove that the second element necessary to invoke the attorney-client privilege has been satisfied, namely, that his call was intended to be, and in fact was, kept confidential. *See In re County of Erie*, 473 F.3d at 419. As we have explained, "it is vital to a claim of privilege that the communications between client and attorney were made in confidence and have been maintained in confidence." *In re Horowitz*, 482 F.2d at 81-82. Moreover, the person invoking the privilege must have taken steps to ensure that it was not waived—"[i]t is not asking too much to insist that if a client wishes to preserve the

12

privilege . . ., he must take some affirmative action to preserve confidentiality." *Id.* at 82; *accord DeFonte*, 441 F.3d at 94-95 (noting that in the context of an incarcerated client the district court may consider on remand whether the party claiming the attorney-client privilege treated the communications "in such a careless manner as to negate her intent to keep them confidential").

The fact that the call was being recorded amounts essentially to the presence of an unsympathetic third party—BOP—listening in. *See Hatcher*, 323 F.3d at 674. Rodriguez's awareness of the presence of this third party, and his decision to nevertheless relate to his sister the substance of the communication directed to his attorney, demonstrates an absence of the affirmative action required to preserve the confidentiality of his statements. The existence of a third party somewhere along the line of communication "does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communications between attorney and client." *Ackert*, 169 F.3d at 139. Where that purpose is missing, however, the presence of a third party counsels against finding that the communication was intended to be, and actually was, kept confidential. *See* 1 McCormick on Evid. § 91 (6th Ed. Supp. 2009) ("Wherever the matters communicated to the attorney are . . . revealed to third persons, obviously the element of confidentiality is wanting. Similarly, if the same statements have been made by the client to third persons on other occasions this is persuasive that like communications to the lawyer were not intended as confidential." (footnotes omitted)).

Moreover, the burden on Rodriguez was neither insurmountable nor even particularly weighty—he could have contacted his attorney directly, as he was represented by counsel at the time of the call, or he could have told his sister that he had an important message to relay to his attorney, regarding pleading, without specifying its content. *See Ackert*, 169 F.3d at 139 (noting

that "a communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client"). Rodriguez does not argue that he had any difficulty in contacting his attorney directly. Accordingly, because Rodriguez was aware that his calls were being recorded, and there is no indication that Rodriguez could not have contacted his attorney directly without being monitored, the district court did not abuse its discretion in finding there was no reasonable expectation of confidentiality in his communications.

Insofar as Rodriguez focuses on the fact that the privilege should apply because the content of his communication went to very heart of defense counsel's duties, i.e. advising his client whether or not to enter a plea of guilty, his argument is misguided. Advising a client on whether to plead guilty is indeed a basic, and indispensable, function of a defense attorney in a criminal case. *See Boria v. Keane*, 99 F.3d 492, 496-97 (2d Cir. 1996) (noting that "counsel may and *must* give the client *the benefit of counsel's professional advice on this crucial decision*" (internal quotation marks omitted) (emphases in original)); *see also* A.B.A. Standards for Criminal Defense Function, Part VI, Standard 4-6.2. However, while proof that the communication was made for the purpose of obtaining legal advice is necessary for the attorney-client privilege, *see In re County Erie*, 473 F.3d at 419, it is not sufficient. The call also must have been kept confidential. Given that Rodriguez was unable to prove this essential element necessary to invoke the privilege, our analysis of whether the privilege applies ends here.[5]

---

[5] The government suggests a second potential basis on which to affirm the district court's decision—that Rodriguez's sister, who was neither his attorney nor a necessary intermediary, also amounted to the presence of a third party. We decline, however, to consider this alternate basis here. While the government argues that Rodriguez's disclosure to his sister, a relative, should not affect the third party analysis, the government cites to no case decided by our Circuit

14

Accordingly, we affirm the district court's admission of the telephone call.

C. Federal Rule of Evidence 410

Rodriguez argues that even if we decide that the call was not precluded from admission by the attorney-client privilege, we nevertheless must reverse and remand for the district court to determine whether Federal Rule of Evidence 410 was applicable to Rodriguez's case in the first instance. We reject this argument.

By its very terms, Rule 410 does not apply to the conversation between Rodriguez and his sister. Rule 410 excludes as inadmissible "any statement made in the course of plea discussions *with an attorney for the prosecuting authority* which do[es] not result in a plea of guilty or which result[s] in a plea of guilty later withdrawn." Fed. R. Evid. 410(4) (emphasis added). Rodriguez does not argue that Francia was acting for, or on behalf of, the prosecuting authority. *Cf. United States v. Castillo*, 615 F.2d 878, 885 (9th Cir. 1980) (finding that defendant's statements to a prison counselor indicating willingness to plead guilty were not covered by Rule 410 "because the counselor was not empowered to negotiate on behalf of the government"). Nor does Rodriguez argue that the plain language of the Rule allows for its application to his sister.

"[W]e may affirm on any basis for which there is a record sufficient to permit

---

for direct support and instead argues mostly based on "first principles." Accordingly, there is no need to address this unresolved question on the facts presented, given our decision that the privilege has been waived due to the presence of BOP as a third party. *See* 1 McCormick on Evid. § 91 (6th Ed. Supp. 2009) ("As to relatives and friends of the client, the results of the cases are not consistent, but it seems that here not only might it be asked whether the client reasonably understood the conference to be confidential but also whether the presence of the relative or friend was reasonably necessary for the protection of the client's interests in the particular circumstances." (footnotes omitted)).

conclusions of law, including grounds upon which the district court did not rely." *United States v. White*, 980 F.2d 836, 842 (2d Cir. 1992). While we typically are hesitant to affirm a decision in the absence of a district court's explicit ruling on the issue, Rodriguez has not advanced an even remotely colorable argument for why a remand is warranted. Rule 410 does not apply to Rodriguez's situation, where he expressed his desire to plead guilty *to his sister*. *See United States v. Barrow*, 400 F.3d 109, 116 (2d Cir. 2005) ("Because Rule 410 is an exception to the general principle that all relevant evidence is admissible at trial, its limitations are not to be read broadly . . . .") (internal quotation marks and citation omitted). We thus decline to direct a remand on the issue.

## CONCLUSION

We affirm the district court's decision to admit Rodriguez's telephone call. The district court did not abuse its discretion in finding that Rodriguez was unable to prove that his communication was made in confidence, given his knowledge that his calls were being recorded by the Bureau of Prisons and his ability to communicate directly with his attorney in the absence of any monitoring.

Accordingly, the judgment of the district court is **AFFIRMED**.

16