16-4136-cr
United States v. Krug, et al.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
_____

August Term, 2016

(Argued: May 11, 2017                    Decided: August 18, 2017)

Docket No. 16-4136-cr


_____

UNITED STATES OF AMERICA,

*Appellant*,

v.

RAYMOND KRUG and JOSEPH WENDEL,

*Defendants-Appellees*.[1]


_____

Before: LEVAL, POOLER, and HALL, *Circuit Judges*.

Appeal from the December 10, 2016 order of the United States District

Court for the Western District of New York (Skretny, *J.*) precluding the

government from introducing at trial certain testimony by a co-defendant turned

---

[1] The Clerk of Court is respectfully directed to amend the caption as above.

government witness on the basis of the common-interest rule of attorney-client privilege. The excluded statements were not made to, in the presence of, or within the hearing of an attorney for any of the common-interest parties; nor did the excluded statements seek the advice of, or communicate advice previously given by, an attorney for any of the common-interest parties; nor were the excluded statements made for the purpose of communicating with such an attorney. While expressing no view as to whether all such circumstances would invoke the privilege, we find nothing in the circumstances here to support the application of the privilege, and accordingly reverse the district court's order of exclusion.

Reversed.

_____

JOSEPH J. KARASZEWSKI, Assistant United States Attorney, *for* James P. Kennedy, Jr., Acting United States Attorney for the Western District of New York, Buffalo, NY, *for Appellant*.

TERRENCE M. CONNORS, Connors LLP, Buffalo, NY, *for Defendant-Appellee Raymond Krug*.

RODNEY O. PERSONIUS, Personius Melber LLP, Buffalo, NY, *for Defendant-Appellee Joseph Wendel*.

2

POOLER, *Circuit Judge*:

Appeal from the December 10, 2016 order of the United States District Court for the Western District of New York (Skretny, *J.*) precluding the government from introducing at trial certain testimony by a co-defendant turned government witness on the basis of the common-interest rule of attorney-client privilege. The excluded statements were not made to, in the presence of, or within the hearing of an attorney for any of the common-interest parties; nor did the excluded statements seek the advice of, or communicate advice previously given by, an attorney for any of the common-interest parties; nor were the excluded statements made for the purpose of communicating with such an attorney. While expressing no view as to whether all such circumstances would invoke the privilege, we find nothing in the circumstances here to support the application of the privilege, and accordingly reverse the district court's order of exclusion.

## BACKGROUND

Defendants-Appellees Raymond Krug and Joseph Wendel and Defendant Gregory Kwiatkowski were officers in the Buffalo Police Department. On or about May 31, 2009, the three officers allegedly used excessive force during the

course of arresting four individuals. As relevant here, Krug and Wendel allegedly used excessive force by shooting an arrestee with a BB gun they recovered from the crime scene.

By indictment dated May 27, 2014, Krug and Wendel were each charged with one count of depriving an individual of his constitutional rights while acting under color of law, in violation of 18 U.S.C. § 242, and one count of conspiring to injure, oppress, threaten, or intimidate individuals to deprive them of their constitutional rights, in violation of 18 U.S.C. § 241. Kwiatkowski was similarly charged with three counts of depriving an individual of his constitutional rights while acting under color of law, in violation of 18 U.S.C. § 242, and one count of conspiring to injure, oppress, threaten, or intimidate individuals to deprive them of their constitutional rights, in violation of 18 U.S.C. § 241.

After the indictment, the three officers entered into a Joint Defense Agreement ("JDA"). Under the JDA, the officers' defense counsel participated in meetings together, transmitted emails, and shared legal memoranda and research.

4

As trial approached, Kwiatkowski decided to cooperate with the government. On December 1, 2016, less than a week before the scheduled start of trial, Kwiatkowski pled guilty before the district court pursuant to a plea agreement.

Prior to his guilty plea, Kwiatkowski engaged in a proffer session with the government. The government disclosed the substance of Kwiatkowski's proposed testimony to defense counsel in an FD-302 report. The report included the following description of testimony by Kwiatkowski that the government intended to offer at trial (hereinafter, "the hallway discussion"):



■■■■■■

Following this disclosure, Krug moved in limine to preclude Kwiatkowski from testifying about the hallway discussion. In his motion, Krug argued that, because there was a JDA between the officers at the time of the hallway discussion, the statements made therein "constituted the mutual sharing of defense strategies, thoughts, and theories that would be privileged pursuant to that agreement." Appellees' Br. at 4. Krug argued further that the common-interest rule protected the statements from disclosure under the JDA even though the officers' attorneys were not present during the conversation.

After receiving written submissions from the parties and hearing oral argument, the district court granted Krug's motion to preclude the government from introducing Kwiatkowski's testimony about the hallway discussion at trial.

■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■ ■■■■■■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■

■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■ ■■■■■■■■■■■■■■ ■■■■■■■■■■■■■■■■■■■■

■ ■■■■■■■■■■■■■■■■■■■■■■■■■■■■



The district court accordingly precluded the government from introducing Kwiatkowski's testimony about the hallway discussion at trial.

The government timely appealed the district court's order.

**DISCUSSION**

**I.      Standard of Review**

Although "[w]e have repeatedly held that this Court reviews rulings on claims of attorney-client privilege for abuse of discretion[,]" there are "occasions where the attorney-client privilege raises a question of law, which we review de novo." *United States v. Mejia*, 655 F.3d 126, 131 (2d Cir. 2011) (internal quotation marks omitted). "[T]o determine the appropriate standard of review, we must

establish whether the district court based its decision on a consideration of the application of the privilege to the communication or on an understanding of the privilege's scope." *Id.* We review the former for abuse of discretion and the latter de novo. *Id.*

Here, we are, as the district court was, asked to determine a question of law regarding the breadth (or scope) of the attorney-client privilege in a common interest setting. Accordingly, we review the district court's decision de novo.

**II.    The Attorney-Client Privilege**

The underlying purpose of the attorney-client privilege is "to encourage full and frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). As a result, the attorney-client privilege creates a rule of confidentiality that "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Id.*; *see also United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir. 1989) (explaining that the privilege "recognizes that a lawyer's assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure" (internal quotation marks omitted)). To that end, "[t]he attorney-client privilege protects

8

communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *Mejia*, 655 F.3d at 132.

"In order to balance this protection of confidentiality with the competing value of public disclosure, however, courts apply the privilege only where necessary to achieve its purpose and construe the privilege narrowly because it renders relevant information undiscoverable." *Id.* (internal quotation marks and brackets omitted); *see Fisher v. United States*, 425 U.S. 391, 403 (1976) (explaining the attorney-client privilege "protects *only* those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." (emphasis added)). "The part[ies] asserting the privilege, in this case [Krug and Wendel], bear[] the burden of establishing its essential elements." *Mejia*, 655 F.3d at 132.

"The joint defense privilege, more properly identified as the common[-]interest rule," is "an extension of the attorney[-]client privilege." *Schwimmer*, 892 F.2d at 243 (internal quotation marks omitted). "It serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been

9

decided upon and undertaken by the parties and their respective counsel." *Id*. The common-interest rule protects "[o]nly those communications made in the course of an ongoing common enterprise and intended to further the enterprise." *Id.* As with all attorney-client privilege claims, a claim of privilege under the common-interest rule "requires a showing that the communication in question was given in confidence and that the client reasonably understood it to be so given." *Id*. at 244.

Although the common-interest rule "somewhat relaxes the requirement of confidentiality by defining a widened circle of persons to whom clients may disclose privileged communications," Restatement (Third) of the Law Governing Lawyers § 76 cmt. c (2000) (internal citation omitted), "a communication directly among the clients is not privileged unless made for the purpose of communicating with a privileged person," *Id.* § 76 cmt. d, i.e., the lawyer, "agents of" the client or of the lawyer "who facilitate communications between" the client and the lawyer, and "agents of the lawyer who facilitate the representation." *Id.* § 70. In this vein, we have stated that it is not "necessary for the attorney representing the communicating party to be present when the communication is made to the other party's attorney" under a common-interest

10

agreement. *Schwimmer*, 892 F.2d at 244. Ultimately, "[w]hat is vital to the privilege is that the communication be made *in confidence* for the purpose of obtaining *legal* advice *from the lawyer*." *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) (Friendly, *J.*).

The communications at issue in this case did not serve the interests that justify the privilege. The communications occurred outside the presence of any lawyer. Notwithstanding that the lawyers for the defendants were nearby and had recently been in communication with their clients, the excluded statements were not made for the purpose of obtaining legal advice from a lawyer, nor did the excluded statements share among defendants advice given by a lawyer, nor did the excluded statements seek to facilitate a communication with a lawyer. Here, the hallway discussion consisted of one member of the JDA (Wendel) conveying his independent, non-legal research to another member of the JDA (Krug) while noting he had sent the same research to his attorney. No legal advice was mentioned, much less shared or otherwise conveyed, among the co-defendants. The mere fact that the communications were among co-defendants who had joined in a joint defense agreement is, without more, insufficient to bring such statements within the attorney-client privilege. We know of no

precedent applying the attorney-client privilege on such facts and we find no circumstances present here that could justify extending the attorney-client privilege to these communications.

## CONCLUSION

For the reasons discussed above, we reverse the order of the district court. The government may offer the proffered testimony by Kwiatkowski regarding the hallway discussion at the trial of Krug and Wendel.