12-265-cr
*United States v. Viloski*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of February, two thousand fourteen.

PRESENT:

> JOHN M. WALKER, JR.,
> JOSÉ A. CABRANES,
> BARRINGTON D. PARKER,
> *Circuit Judges*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,

*Appellee*,

-v.-                                                                    No. 12-265-cr

BENJAMIN VILOSKI,

*Defendant-Appellant*,

JOSEPH QUERI, JR., GARY GOSSON A/K/A GOOSE, GARY CAMP,

*Defendants*.[*]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**FOR DEFENDANT-APPELLANT:**          MARK J. MAHONEY, Harrington & Mahoney, Buffalo, NY.

---

[*] The Clerk of Court is directed to amend the official caption in this case to conform to the listing of the parties above.

FOR APPELLEE:                           RAJIT S. DOSANJH, Assistant United States
                                        Attorney (Steven D. Clymer, Gwendolyn E.
                                        Carroll, Assistant United States Attorneys, *on
                                        the brief*), for Richard S. Hartunian, United
                                        States Attorney for the Northern District of
                                        New York, Syracuse, NY.

Appeal from the judgment, entered January 18, 2012, of the United States District Court for the Northern District of New York (David N. Hurd, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of conviction of the District Court is **AFFIRMED**, but the cause is **REMANDED** to the District Court for reconsideration of the forfeiture award in a manner consistent with this Order.

Defendant Benjamin Vilsoki appeals his conviction and subsequent sentence on charges of conspiracy to commit mail and wire fraud, substantive counts of mail fraud, conspiracy to commit concealment money laundering, substantive counts of concealment money laundering, and making false statements to federal officials. Viloski challenges his conviction on numerous grounds. Specifically, he argues that (1) the Government's theory of mail fraud was legally flawed and/or constructively amended; (2) the evidence was insufficient to convict; (3) the money laundering charge "merged" with the fraud charge; (4) the jury's verdict in the false statement charge was inconsistent; (5) the District Court erred in refusing to compel the Government to grant immunity to a defense witness; and (6) the jury instructions were incorrect. He contends that the District Court erred by (1) failing to dismiss the indictment; (2) denying Viloski's Rule 29 motion; and (3) denying Viloski's motion for a new trial. He also challenges his sentence, including the restitution and forfeiture orders.

For the reasons stated below, we reject all of Viloski's challenges to his conviction, but remand for reconsideration of the forfeiture order.

## BACKGROUND[1]

In 2009, Viloski was charged in a twenty-count indictment with one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371; five counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1346; five counts of wire fraud in violation of 18 U.S.C. §§ 1343 and 1346; one count of conspiracy to commit money laundering and transactions in criminally derived property in violation of 18 U.S.C. § 1956(h); three counts of aiding and abetting concealment money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (2); four counts of aiding and abetting transactions in criminally derived property in violation of 18 U.S.C. § 1957(a) and (2); and one count of making false statements to federal investigators in violation of 18 U.S.C. § 1001.

---

[1] Because Viloski appeals from a judgment of conviction entered after a jury trial, we draw the facts from the evidence presented at trial, viewed in the light most favorable to the Government. *See, e.g., United States v. Rosen*, 716 F.3d 691, 694 (2d Cir. 2013); *Parker v. Matthews*, 132 S. Ct. 2148, 2152 (2012).

Viloski was a Pittsburgh-based lawyer and real estate broker. The charges were based on Viloski's conduct when he was acting as a broker/consultant for development projects of Dick's Sporting Goods ("Dick's"). The evidence at trial demonstrated that Viloski acted as a consultant for numerous real estate transactions in which he accepted a consulting fee, and passed on a portion of that fee to co-defendant Joseph Queri, an employee of Dick's. In other transactions, Viloski did no consulting work, but accepted a consulting fee that he passed on to Queri *in toto*. In some of these instances, he passed the payments to Queri by paying them through a real estate company owned by co-defendant Gosson.

Following the Supreme Court's decision in *Skilling v. United States*, 561 U.S. 358 (2010), which held that honest-services fraud under 18 U.S.C. § 1346 was limited to bribery and kickback schemes, the Government notified the District Court that it would no longer prosecute defendants here on the honest-services fraud theory of liability. Viloski then moved to dismiss the indictment on the ground that a "scheme to deprive another of potentially valuable information that could impact on economic decisions" was not prosecutable under the mail and wire fraud statutes. The District Court denied that motion. The Government filed a superseding indictment, excising the honest-services allegations.

After trial, the jury convicted Viloski of conspiracy to commit mail and wire fraud (Count One), two substantive counts of mail fraud (Counts Two and Five), the money-laundering conspiracy (Count Twelve), three substantive counts of money laundering (Counts Thirteen through Fifteen), one count of transactions in criminally-derived property (Count Sixteen), and making false statements (Count Thirty-One). He was acquitted on the remaining counts. After trial, Viloski filed a motion for a judgment of acquittal and for a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33. The District Court denied both.

On January 13, 2012, the District Court sentenced Viloski principally to a below-Guidelines term of incarceration of sixty months. The sentence also included restitution in the total amount of $75,000 to two entities and forfeiture in the amount of $1,273,285, to be paid by Viloski jointly and severally with codefendant Queri.

## DISCUSSION

Viloski now argues that we must reverse his conviction for a myriad of reasons. We address three of these claims in detail below and summarily dismiss the others.

### A.    Theory of Mail and Wire Fraud

Viloski asserts that the Government proceeded with an invalid theory of fraud—one in which information about self-dealing was itself the property of which Dick's was deprived. In the indictment here, he claims, the Government was simply trying to "repackage" an invalid honest-services fraud charge. The Government responds that it charged a valid "right to control" theory of fraud. In response, Viloski argues two things: First, that the "right to control" theory was not set forth in the indictment, and so insofar as the jury was instructed on that theory, it was a constructive amendment. Second, that the only theory of fraud actually pled is deficient, because information about a corporate officer's self-dealing does not constitute "property" for purposes of a prosecution under 18 U.S.C. § 1341.

3

### 1. "Right to Control"

To procure a conviction for mail fraud, the government must prove three elements: (1) a scheme to defraud victims of (2) money or property, through the (3) use of the mails. *United States v. Dinome*, 86 F.3d 277, 283 (2d Cir. 1996). Proof of fraudulent intent, or the specific intent to harm or defraud the victims of the scheme, is an essential component of the "scheme to defraud" element. **Id.** However, "the government is not required to show that the intended victim was actually defrauded. The government need only show that the defendant[] contemplated some actual harm or injury." *United States v. Wallach*, 935 F.2d 445, 461 (2d Cir. 1991).[2]

The Supreme Court has held that § 1341 is "limited in scope to the protection of property rights." *McNally v. United States*, 483 U.S. 350, 360 (1987). We have recognized the "right to control" as a property interest that is protected by the mail fraud statute. "While the interests protected by the mail and wire fraud statutes do not generally extend to intangible rights . . ., they do extend to all kinds of property interests, both tangible and intangible. Since a defining feature of most property is the right to control the asset in question, we have recognized that the property interests protected by the statutes include the interest of a victim in controlling his or her own assets." *United States v. Carlo*, 507 F.3d 799, 801–02 (2d Cir. 2007) (internal citation omitted); *see also Dinome*, 86 F.3d at 284 .

However, we have clarified that "application of the ['right to control'] theory is predicated on a showing that some person or entity has been deprived of potentially valuable economic information. Thus, the withholding or inaccurate reporting of information that could impact on economic decisions can provide the basis for a mail fraud prosecution." *Wallach*, 935 F.2d at 462–63 (internal citations omitted). "In cases resting upon the so-called 'right to control' theory of mail fraud, 'the information withheld either must be of some independent value or must bear on the ultimate value of the transaction.'" *United States v. Rossomando*, 144 F.3d 197, 201 n.5 (2d Cir. 1998) (quoting *Dinome*, 86 F.3d at 284). We have consistently kept the right to control theory (prosecuted under § 1341) separate from honest services fraud (prosecuted under § 1346).

Although Viloski does not contest that deprivation of the "right to control" has been approved by the Second Circuit, he contends that no such theory was contained in the indictment here. However, he is simply incorrect that the indictment does not expressly allege a violation of the right to control: In all the fraud counts (wire and mail; conspiracy and substantive), the object of the conspiracy is alleged to have been "to obtain money and property, and to deprive Dick's of potentially valuable information that could impact on its economic decisions." Joint App'x 907. The deprivation of information that affects economic decisions is precisely the type of situation in which we have approved this theory. *See Rossomando*, 144 F.3d at 201 n.5 ("[T]he concrete harm contemplated by the defendant is to deny the victim the right to control its assets by depriving it of information necessary to make discretionary economic decisions."). Thus, as to the right to control, the indictment gave sufficient notice that the Government sought to prosecute Viloski on that charge under § 1341.

The jury instructions were in line with this theory: The District Court defined "property" under the fraud statutes to "include[] intangible property interests such as the right of a business to control the use of its own assets. A business has a right both [1] to control the spending of its own

---

[2] The analysis of mail fraud and wire fraud is, in all respects material to this case, identical. *See United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000).

4

funds and [2] to have access to information known to its employees and officers that could impact on its spending of its funds." Joint App'x 812. Read in light of our case law, it is clear that the Government did not charge two separate and distinct theories of fraud. Rather, the Government charged fraud under a "right to control" theory. The District Court's instructions are consistent with that theory: they did not, as Viloski claims, instruct the jury that the information *itself* was property. Rather, access to such information was described as an aspect of the business's intangible property interests. This is consistent with *Wallach*, *Rossomando*, and *Carlo*.

Accordingly, we conclude that this was a validly charged theory of fraud, and that the District Court's jury instructions did not thereby constructively amend the indictment.

### 2.  *Potentially* Valuable Information

Viloski next makes much of the fact that the indictment alleged the deprivation of "*potentially* valuable information" which "*could* impact" economic decisions. The jury instructions, too, referred to "information . . . that *could* impact on [a business's] spending of funds." Viloski argues that the mere possibility of "impacting" economic decisions is insufficient to form the basis for a "right to control" theory of fraud.

Although the "right to control" has been phrased in slightly different ways in various cases, *Wallach* and it progeny make clear that information that "*could impact* on economic decisions" can constitute intangible property for mail fraud prosecutions. *See Wallach*, 935 F.2d at 463. The intangible property theory of mail fraud recognizes the economic value in the nondisclosure of information that would impose a risk of loss, regardless of whether loss is actually suffered.

Contrary to Viloski's arguments, our holding in *Mittelstadt* is not to the contrary. In that case, we noted that "lack of information that might have an impact on the decision regarding where government money is spent, without more, is not a tangible harm and therefore does not constitute a deprivation of section 1341 'property.'" *United States v. Mittelstaedt*, 31 F.3d 1208, 1217 (2d Cir. 1994). But that statement cannot be read in isolation, as Viloski seeks to do. Rather, we went on to hold that the key element in a prosecution under a right-to-control theory was whether tangible, economic harm was possible. *See id.* ("Where an individual standing in a fiduciary relation to another conceals material information that the fiduciary is legally obliged to disclose, that non-disclosure does not give rise to mail fraud liability *unless the omission can or does result in some tangible harm*." (emphasis supplied)). For example, in that case, we concluded that to constitute deprivation of material information that could result in tangible harm, and thus, the right to control, the omission must affect not merely where money was to be spent, but instead *how much* was to be spent. *See id.* ("To convict, the government had to establish that the omission caused (or was intended to cause) actual harm to the village of a pecuniary nature *or* that the village could have negotiated a better deal for itself if it had not been deceived."). Thus, "to be material, the information withheld either must be of some independent value or must bear on the ultimate value of the transaction." *Id.*

The District Court's instructions appropriately instructed the jury that it could find the element of deprivation of property "if you find beyond a reasonable doubt that an employee or officer of Dick's either failed to disclose or inaccurately reported *economically material information* that the officer or employee had reason to believe would have caused Dick's to change its business conduct." Joint App'x 813 (emphasis added). The requirement that the information be

economically material avoids the *Mittelstadt* problem of deprivation of information that could not lead to tangible harm.

Here, the deprivation of information regarding Queri's kickbacks was material and potentially could result in tangible harm because Dick's could have negotiated better deals for itself. And there was sufficient evidence in the record for the jury to conclude that it was, in fact, economically material and, on that basis, to convict.

For these reasons, we affirm the District Court's denial of both the motion to dismiss and the Rule 29 and 33 motions.

## B.     Refusal to compel immunity for the defense witness

Viloski also argues that the District Court erred in refusing to compel the Government to offer immunity to a witness that Viloski wished to call on his own behalf. Specifically, Viloski claims that Oscar Plotkin, a developer, had exculpatory evidence to offer, based on *Brady* disclosures indicating that Queri had told Plotkin that Dick's knew that Queri was receiving portions of the fees.

We review a district court's decision not to compel immunity for "abuse of discretion," and consider whether "(1) the government has engaged in discriminatory use of immunity to gain a tactical advantage or, through its own overreaching, has forced the witness to invoke the Fifth Amendment; and (2) the witness' testimony will be material, exculpatory and not cumulative and is not obtainable from any other source." *United States v. Ebbers*, 458 F.3d 110, 118 (2d Cir. 2006) (citation omitted).[3] "'The situations in which the United States is required to grant statutory immunity to a defense witness are few and exceptional.' So few and exceptional are they that, in the nearly thirty years since establishing a test for when immunity must be granted, we have yet to reverse a failure to immunize." *United States v. Ferguson*, 676 F.3d 260, 291 (2d Cir. 2011) (quoting *United States v. Praetorius*, 622 F.2d 1054, 1064 (2d Cir. 1979)). Viloski has failed to meet his high burden.

Here, the Government informed the District Court that Plotkin was under investigation for, among other things, bank fraud, which is a legitimate reason to decline to compel immunity. It is clear that "[t]he Government may reasonably refuse to grant immunity where a witness is a *potential* target of criminal prosecution." *United States v. Rosen*, 716 F.3d 691, 704 (2d Cir. 2013) (emphasis added) (citing *United States v. Turkish*, 623 F.2d 769, 778 (2d Cir. 1980)).

---

[3] Here, Viloski seeks to bring this claim under the Compulsory Process Clause of the Constitution, under which, he argues, *de novo* review for legal error is appropriate. (*Ebbers* was based on a "fair trial" claim, and so, Viloski argues, does not directly control.) We have previously rejected this theory. *United States v. Turkish*, 623 F.2d 769, 773–74 (2d Cir. 1980) ("The established content of the Sixth Amendment does not support a claim for defense witness immunity. Traditionally, the Sixth Amendment's Compulsory Process Clause gives the defendant the right to bring his witness to court and have the witness's non-privileged testimony heard, but does no[t] carry with it the additional right to displace a proper claim of privilege, including the privilege against self-incrimination."). Instead, we have consistently grounded the analysis in the Fifth Amendment's Due Process Clause.

In *Ebbers*, we specifically noted that "[d]e novo review of the balancing analysis would not be appropriate because trial courts have a comparative advantage over appellate courts when it comes to weighing the needs of the parties and the centrality of particular pieces of evidence to a trial." *Ebbers*, 458 F.3d at 118. The same considerations apply here. *But see United States v. Serrano*, 406 F.3d 1208, 1214–15 (10th Cir. 2005) (applying *de novo* review to Compulsory Process Clause claim).

In response, Viloski contends that the District Court did not sufficiently ensure that the Government was, in fact, still legitimately investigating Plotkin. Moreover, he contends that it is implausible the Government would prosecute him for bank fraud, because, under the Government's theory of Viloski's case, Plotkin was a victim rather than a perpetrator. However, Plotkin refused to proffer with the Government, and when the Government itself subpoenaed Plotkin to testify at trial, he invoked his Fifth Amendment privilege against self-incrimination. There is no evidence that the Government's investigation was pretextual: In fact, the Government chose not to call (and immunize) Plotkin for its own purposes in light of its ongoing investigation. Viloski has not drawn our attention to any authority that would require the District Court to make more extensive factual findings before accepting the Government's claim that it was still investigating; in fact, we have expressly cautioned against such a hearing. *See United States v. Todaro*, 744 F.2d 5, 9 (2d Cir. 1984). We conclude that the District Court appropriately declined to compel immunity.

## C.    Sentence, Restitution, and Forfeiture

Finally, Viloski attacks his sentence. He contends that (1) the 60-month sentence in this case proceeded from an incorrectly-calculated Guidelines range and was unreasonably disproportionate to the 41-month sentence imposed on Queri; (2) the restitution was ordered to entities that were not victims and that sustained no cognizable loss; and (3) the "enormous" forfeiture was imposed without sufficient explanation, and without any consideration of Viloski's Eighth Amendment "excessive fines" claim.

The alleged Guidelines miscalculation primarily arises from the fact that the PSR treated Queri's *gain* as a substitute for the victims' *loss* in calculating sentencing enhancements. We review the District Court's loss determination for clear error. *United States v. Lacey*, 699 F.3d 710, 719 (2d Cir. 2012). A sentencing court is required only to make a "reasonable estimate of the loss." *Id.* The District Court adopted the PSR's Guideline calculation, which used defendants' gain as a measurement of loss because "there is a loss but it reasonably cannot be determined." For Guideline-calculation purposes, however, the PSR did not include the entire amount of defendants' gain, but limited itself to the amount funneled directly and indirectly through Viloski to Queri, for a total of 1,273,285.50. At sentencing, the District Court noted that "the loss used to establish the total offense level overstates the actual harm caused by [Viloski's] conduct." Joint App'x 1021. However, the District Court expressly found that the PSR was "technically correct" in calculating the Guidelines, and we can discern no clear error in that conclusion. In any event, the District Court properly considered the § 3553(a) factors and ultimately imposed a substantially below-Guidelines sentence, partially on the basis that the loss amount was greater than the actual harm caused.

Viloski's remaining arguments as to his sentence and as to restitution are without merit.

As to Viloski's forfeiture argument, in reviewing an order of forfeiture, we review the district court's legal conclusions *de novo* and the factual findings for clear error. *United States v. Sabhnani*, 599 F.3d 215, 261 (2d Cir. 2010). Viloski argues that the District Court failed to find that the $1.3 million imposed in forfeiture was "traceable" to the fraud counts and/or "involved in" the money laundering counts. This argument fails. "While property need not be personally or directly in the possession of the defendant, his assignees, or his co-conspirators in order to be subject to forfeiture, the property must have, at some point, been under the defendant's control or the control of his co-conspirators in order to be considered 'acquired' by him." *United States v. Contorinis*, 692 F.3d 136,

7

147 (2d Cir. 2012) (internal quotation marks and citation omitted).  The funds Viloski challenges were undoubtedly under his control at some point—indeed, they were necessarily under his control for him to "launder" them, which the jury had already found beyond a reasonable doubt.

However, Viloski is correct that the District Court did not consider the factors in *United States v. Bajakajian*, 524 U.S. 321 (1998), to determine whether the forfeiture order violates the "excessive fines" clause of the Eighth Amendment.  We have previously held that a District Court is required to do so before imposing a forfeiture order of this magnitude, *see United States v. Varrone*, 554 F.3d 327, 332–33 (2d Cir. 2009).  Accordingly, we remand the forfeiture order for consideration of the *Bajakajian* factors by the District Court.

## CONCLUSION

We have reviewed the record and considered the remainder of Viloski's arguments[4] and find them to be without merit.  For the reasons set out above, we **AFFIRM** the judgment of the District Court of conviction, but **REMAND** the cause to the District Court for reconsideration of the forfeiture order in a manner consistent with this Order.

FOR THE COURT,
Catherine O'Hagan Wolfe, Clerk of Court

---

[4] Namely, that the evidence was insufficient to convict; the money laundering charge "merged" with the fraud charges; the jury's verdict in the false statement charge was inconsistent; and the jury instructions were incorrect.