14-3213-cr(L)
United States v. Christopher Finazzo, Douglas Dey

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of March, two thousand seventeen.

PRESENT: ROBERT D. SACK,
DENNY CHIN,
CHRISTOPHER F. DRONEY,
*Circuit Judges*.

------------------------------------------------------------------------

UNITED STATES OF AMERICA,

*Appellee*,

v.                                                   Nos.   14-3213-cr(L)
                                                            14-3330-cr(Con)

CHRISTOPHER FINAZZO, DOUGLAS DEY,

*Defendants-Appellants*.

------------------------------------------------------------------------

FOR DEFENDANTS-APPELLANTS:         ROBERT J.A. ZITO (Alan S. Lewis, Karen E. Meara, Madelyn K. White, *on the brief*), Carter Ledyard & Milburn LLP, New York, New York, *for* Christopher Finazzo.

T. BARRY KINGHAM (Jacques Semmelman, Rachel L. Cohn, *on the brief*), Curtis, Mallet-Prevost, Colt & Mosle LLP, New York, New York, *for* Douglas Dey.

1

FOR APPELLEE:                                    WINSTON M. PAES, Assistant United States Attorney (Amy Busa, Claire S. Kedeshian, Assistant United States Attorneys, *on the brief*), *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, New York.

Appeal from the August 27, 2014 judgments of the United States District Court for the Eastern District of New York (Mauskopf, *J.*), as amended on November 12, 2014.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED** in part and **VACATED** and **REMANDED** in part.

Defendant Christopher Finazzo appeals his conviction and sentence of eight years' imprisonment and three years' supervised release. His sentence was imposed following a jury verdict of guilty on: (1) one count of conspiracy to commit mail and wire fraud and to violate the Travel Act—in violation of 18 U.S.C. § 371; (2) fourteen counts of mail fraud—in violation of 18 U.S.C. § 1341; and (3) one count of wire fraud—in violation of 18 U.S.C. § 1343. In addition, Finazzo appeals the $25,790,822.94 forfeiture order, and Finazzo and Defendant Douglas Dey both appeal the district court's $13,690,822.94 restitution order imposed jointly and severally against them.

The charges arose from an alleged scheme in which Finazzo—a merchandising executive at Aéropostale, Inc.[1]—caused Aéropostale to use South Bay Apparel Inc. ("South Bay")—a company controlled by Dey—as a supplier of certain apparel for retail sale by Aéropostale, in exchange for secret payments to Finazzo of portions of South Bay's profits. On appeal, Finazzo argues that: (1) the district court's jury instructions regarding the "right to control" Aéropostale's property under the mail and wire fraud statutes were improper, (2) the district court improperly gave the jury a "no-ultimate-harm" instruction, (3) there was insufficient evidence to support Finazzo's conviction under the "right to control" theory, (4) the district court erred in excluding expert testimony offered by Finazzo, (5) the district court procedurally erred in calculating Aéropostale's losses under the Sentencing Guidelines, (6) Finazzo's eight-year prison sentence was substantively unreasonable, (7) the district court erred in instructing the jury that forfeitability of proceeds and property need only be proven by a preponderance of the evidence, (8) the jury's forfeiture verdict was unconstitutionally excessive, (9) the district court erred in concluding that Finazzo had waived his attorney-client privilege regarding an email that triggered Aéropostale's investigation of the alleged fraud, and

---

[1] Aéropostale is a retailer of casual apparel and accessories primarily targeting teenagers.

(10) the district court erred in its restitution calculation. Dey also challenges the district court's restitution calculation.

We address points (1), (3), and (10) in an opinion simultaneously issued with this order. The opinion affirms the district court on points (1) and (3), and vacates and remands to the district court on point (10) for a new restitution calculation. In this summary order, we affirm the district court on the remaining issues. We assume the parties' familiarity with the underlying facts and procedural history of this case.

A. "No Ultimate Harm" Instruction

In its jury instructions regarding the substantive mail-fraud counts (Counts 2–15), the district court explained that good faith of the defendant was a complete defense to a mail-fraud charge. However, the court added that:

> [I]f the defendant participated in the scheme to defraud, then a belief by the defendant, if such belief existed, that ultimately everything would work out so that no one would lose any money does not require you to find that the defendant acted in good faith. If the defendant participated in the scheme for the purpose of causing some financial or property loss to another, then no amount of honest belief on the part of the defendant that the scheme would, for example, ultimately make a profit, will excuse fraudulent actions or false representations by him.

> As a practical matter, then, in order to sustain the charges against the defendant, the government must prove beyond a reasonable doubt that the defendant knew that his conduct as a participant in the scheme was calculated to deceive and nonetheless, he participated in the alleged fraudulent scheme for the purpose of causing some loss to another.

Finazzo App'x at 100. Finazzo argues that there was no evidentiary basis for this "no ultimate harm" instruction and that it therefore improperly eliminated the Government's burden to prove he intended to defraud Aéropostale. We review the propriety of jury instructions *de novo*. *United States v. Botti*, 711 F.3d 299, 307 (2d Cir. 2013).

This Court has acknowledged that "no ultimate harm" instructions may "appear[] to be at odds with the requirement that a defendant must have intended to harm his victim in order to be guilty of mail fraud." *United States v. Rossomando*, 144 F.3d 197, 201 (2d Cir. 1998). However, we have stated that the "key word" in such instructions is "ultimately," and that "the point that [such instructions] seek[] to convey is that where some immediate loss to the victim is contemplated by a defendant, the fact that the defendant believes . . . that he will 'ultimately' be able to work things out so that the victim suffers no loss is no excuse for the real and immediate loss contemplated to result

3

from defendant's fraudulent conduct." *Id.* As such, in cases where there is "a sufficient predicate in the record" for the instruction, "the risk that a jury might be misled into believing that no harm need be intended is reduced," and the instruction is permissible. *Id.* at 202.

We find that there was a sufficient factual predicate for the no-ultimate-harm instruction. While the defense's theory at trial largely focused on the claim that Finazzo did not intend Aéropostale to *ever* lose money, *see id.* (finding a no-ultimate-harm instruction improper where defense's theory at trial had been that the defendant thought the victim was "never going to lose money"), the defense *also* emphasized that Aéropostale was ultimately quite successful over the time period of Finazzo's alleged fraud. We find this to be a sufficient factual predicate for the no-ultimate-harm instruction, especially where the district court clarified immediately thereafter that the Government was still required to establish that Finazzo engaged in the alleged fraudulent scheme "for the purpose of causing some loss to another." Finazzo App'x at 100. Indeed, we upheld a nearly identical clarification of a no-ultimate harm instruction in *United States v. Berkovich*, 168 F.3d 64 (2d Cir. 1999), because it "clearly informed the jury that they could not convict appellant unless he intended to cause loss to someone," which "greatly reduced" the possibility of jury confusion, *id.* at 67.

B. Expert Testimony

Finazzo argues that the district court erroneously excluded expert testimony by Sam Rosenfarb, a partner at a forensic accounting and valuation firm. Rosenfarb was offered to testify that Aéropostale "was not financially damaged as a result of the transactions with South Bay," and that the transactions between Aéropostale and South Bay were "fair," "bona[]fide," and that "they were a good deal for Aéropostale." Finazzo App'x at 128. The district court precluded Rosenfarb's testimony following a *Daubert* hearing. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). We review a district court's decision to exclude expert testimony under *Daubert* for abuse of discretion. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 264 (2d Cir. 2002). A decision is not an abuse of discretion unless it is "manifestly erroneous." *Id.* at 265 (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir. 1995)) (internal quotation marks omitted).

Federal Rule of Evidence 702 permits expert testimony if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

4

The district court did not abuse its discretion in precluding Rosenfarb's expert testimony. As an initial matter, the district court determined that Rosenfarb's proffered opinion that Aéropostale "was not financially damaged" was not raised in "any . . . disclosures" and "there clearly was no notice to the government as to that" opinion. Finazzo App'x at 222. Finazzo does not challenge that finding on appeal, let alone argue that it was an abuse of discretion. Moreover, the court correctly found that Rosenfarb's opinion that the transactions between Aéropostale and South Bay were *bona fide*, rather than fake, was irrelevant, since it was undisputed that Aéropostale received goods it bought from South Bay. *See* Finazzo App'x at 128 (Rosenfarb stating that "Bona[]fide transactions means they were real transactions, they weren't bogus. There actually were goods that were delivered and received and paid for.").

The district court also properly precluded Rosenfarb's opinion that the transactions were a "good deal" for Aéropostale. When asked at the *Daubert* hearing how he defined "good deal," Rosenfarb responded: "It's an English concept. It's just English words." Finazzo App'x at 184. On cross-examination, the Government followed up by asking, "So you just, hey, it's a good deal?" *Id.* Rosenfarb responded, "That's fair." *Id.* The district court correctly found that Rosenfarb's opinion was inadmissible because it addressed lay matters that the jury was capable of understanding and deciding without the expert's help. *See Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989) ("For an expert's testimony to be admissible . . . it must be directed to matters within the witness' scientific, technical, or specialized knowledge and not to lay matters which a jury is capable of understanding and deciding without the expert's help.").

Lastly, the district court did not abuse its discretion in precluding Rosenfarb's testimony that the transactions were "fair." Rosenfarb's testimony was based merely on a comparison of South Bay's gross margins to that of its "peers." *See* Finazzo App'x at 169. However, *inter alia*, the district court correctly pointed out that: (1) Rosenfarb did not explain why he considered these entities "peers" of South Bay, (2) the purported peer groups did not appear to actually be similar, since some of the businesses were in different industries, (3) Rosenfarb compared South Bay's and Aéropostale's gross margins, even though he conceded the companies were not similarly situated, and (4) Rosenfarb did not testify that those in his field rely on the data he used for peer-group comparisons. Under such circumstances, the district court was within its discretion to preclude Rosenfarb's testimony as unreliable. *See Amorgianos*, 303 F.3d at 266 ("A court may conclude that there is simply too great an analytical gap between the data [relied on by an expert] and the opinion proffered. Thus, when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." (citation omitted)).

C. Procedural Reasonableness of Sentence

Finazzo challenges the district court's sentence as procedurally unreasonable, arguing that the district court erred in calculating an actual loss to Aéropostale of over $20,000,000.00—which increased Finazzo's offense level by 22 under U.S.S.G. § 2B1.1(b). This Court reviews a sentence for procedural reasonableness under a deferential abuse-of-discretion standard. *United States v. Jesurum*, 819 F.3d 667, 670 (2d Cir. 2016). We review the district court's interpretation of the Sentencing Guidelines *de novo* and its findings of fact for clear error. *United States v. Rubenstein*, 403 F.3d 93, 99 (2d Cir. 2005).

Finazzo contends that Counts 2 through 16—on which Finazzo was convicted of mail and wire fraud for depriving Aéropostale of the "right to control" its assets—cannot support *any* loss calculation because the right to control assets is an "intangible interest" whose diminution cannot be measured in dollars. Finazzo Br. at 83–85. This argument has no merit. The Sentencing Guidelines define "[a]ctual loss" as "the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 cmt. n.3(A)(i). "Pecuniary harm" is defined as "harm that is monetary or that otherwise is readily measurable in money." *Id.* cmt. n.3(A)(iii). Finazzo cites no authority for the proposition that deprivation of the right to control assets cannot create loss under the Guidelines. Indeed, this Court has expressly contemplated that deprivation of the right to control could lead to tangible, pecuniary harm. *See United States v. Mittelstaedt*, 31 F.3d 1208, 1217 (2d Cir. 1994) (stating that deprivation of the right to control "does not give rise to mail fraud liability unless the omission can or does result in some tangible harm" and that the government had to establish that the deprivation "caused (or was intended to cause) actual harm to the [victim] of a pecuniary nature *or* that the [victim] could have negotiated a better deal for itself if it had not been deceived"). We have subsequently upheld loss calculations where the defendant was convicted on a right-to-control theory. *See, e.g.*, *United States v. Viloski*, 557 F. App'x 28, 35–36 (2d Cir. 2014) (summary order) (affirming the district court's determination that the defendant's kickback scheme created a loss, where the defendant was convicted on a right-to-control theory). We therefore reject Finazzo's argument on this point.

Finazzo further argues that the district court erred in attributing loss to the conspiracy. He claims that the district court "restricted its analysis to whether Mr. Finazzo caused a loss [under the conspiracy count (Count 1)]." Finazzo Br. at 85–86. He then contends that the conspiracy could not have caused loss to Aéropostale because the jury did not find him guilty of intent to deprive Aéropostale of money under the substantive mail and wire fraud counts (Counts 2–16).[2] On this basis, he claims that the

_____

[2] Count 1 charged Finazzo with conspiracy to commit mail fraud, wire fraud, and to violate the Travel Act. In its special verdict sheet, the jury found Finazzo guilty of conspiracy to commit mail fraud "[o]n the basis of intent to deprive Aéropostale of money" and "[o]n the basis of Aéropostale's right to control use of its assets." Dist. Ct. Dkt. No. 260, at 2. It found Finazzo guilty of conspiracy to commit wire fraud on the basis of Aéropostale's right to

6

district court's entire loss calculation was improper. We also reject this argument. To begin with, Finazzo incorrectly asserts that the district court restricted its analysis for its Guidelines calculation to the loss caused by the conspiracy offense. The district court stated that it was considering only the conspiracy conviction "[f]or purposes of fixing restitution," to avoid determining whether convictions based on a right-to-control theory constituted offenses against property within the meaning of the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A. Dey App'x at 2530. The court did not so restrict its analysis with regards to its loss calculation. Finazzo also incorrectly asserts that the jury's not-guilty verdict on Counts 2–16 for intent to deprive Aéropostale of money precludes a loss finding for the conspiracy conviction. He argues that a conspiracy can support a loss finding "only if specific acts are taken to further the conspiracy that inflict a loss." Finazzo Br. at 86. However, the jury's verdict on Counts 2–16 does not compel the finding that no overt act taken in furtherance of the conspiracy inflicted a loss. First, as explained above, the jury found Finazzo guilty on Counts 2–16 on a right-to-control theory, and Finazzo has failed to demonstrate that deprivation of the right to control assets cannot inflict a loss. Second, the alleged overt acts under the conspiracy count (Count 1) include specific acts beyond the scope of Counts 2–16. In fact, the overt acts spanned a ten-year time period (1996–2006), while the substantive counts only involved transactions made in 2005 and 2006. Third, the jury concluded that Finazzo was guilty of conspiracy to commit mail fraud on the basis of both his intent to deprive Aéropostale of money as well as the loss of the right to control its assets, and the district court made the same conclusion.[3] Thus, we reject Finazzo's argument that the district court could not properly attribute loss to the conspiracy count.

Finazzo also argues that his sentence is procedurally unreasonable because "the District Court restricted its calculation of actual losses to what it thought it could attribute to the conspiracy" and then used that loss calculation to calculate a Guidelines range above the statutory maximum for the conspiracy offense. Finazzo Br. at 93–95. This argument is also without merit. As noted above, the district court restricted its loss calculation to the conspiracy count *only for restitution purposes*, not for its Guidelines calculation as to the recommended period of incarceration. This fact vitiates Finazzo's argument, since he fails to demonstrate that the loss calculation was based solely on the conspiracy count. Furthermore, even if the district court *had* only considered the loss

---

control use of its assets, but not on the basis of intent to deprive Aéropostale of money. The jury also found Finazzo guilty of conspiracy to violate the Travel Act. Counts 2 through 15 charged Finazzo with specific substantive mail fraud counts. On each of those counts, the jury found Finazzo guilty on the basis of Aéropostale's right to control use of its assets, but not on the basis of intent to deprive Aéropostale of money. Count 16 charged Finazzo with substantive wire fraud. The jury found Finazzo guilty on the basis of Aéropostale's right to control use of its assets, but not on the basis of intent to deprive Aéropostale of money.

[3] Moreover, on Counts 2–16, the jury declined to find Finazzo guilty on the basis of *intent* to deprive Aéropostale of money. Finazzo conflates this with a finding that he did not inflict a loss. They are, however, separate questions. Furthermore, even if the jury *had* found that Finazzo did not inflict a loss, "district courts may find facts relevant to sentencing . . . by a preponderance of the evidence and in so doing may take into account acquitted conduct when sentencing defendants." *United States v. Johnson*, 507 F.3d 793, 797 (2d Cir. 2007).

7

caused by the conspiracy, Finazzo provides no support for his claim. The district court grouped Finazzo's offenses together under U.S.S.G. § 3D1.2(b), and Finazzo does not challenge that grouping on appeal. Under § 3D1.3(a), the offense level applicable to the group was "the highest offense level of the counts in the Group." Finazzo cites no authority for the proposition that the Guidelines range for a group must be constrained by the statutory maximum for the count that provides the group's offense level under § 3D1.3.

Finazzo also claims that the district court's explanation of its loss calculation was insufficient. He states that the district court "provided no explanation for how it leapt from the government's so-called 'examples' of loss to its conclusion that the precise amount of Mr. Finazzo's gain was a measure of loss." Finazzo Br. at 87. Contrary to Finazzo's assertions, the district court's explanation of its loss calculation does not constitute an abuse of discretion. In explaining its calculation, the district court adopted the detailed factual recitation in the Government's Sentencing Memorandum. *Inter alia*, that memorandum noted that Julian Geiger—Aéropostale's Chief Executive Officer—testified that Finazzo profiting from transactions with vendors "directly diminished Aéropostale's ability to maximize its profits because monies were going elsewhere that could have gone to the company." Dist. Ct. Dkt. No. 334, at 13 (quoting Dey App'x at 1418) (internal quotation marks omitted). It is undisputed that Finazzo received $25,790,822.94 from his association with South Bay. The district court therefore explained that it found an actual loss to Aéropostale in that amount because Aéropostale's loss could "reasonably be measured as the value of the kickbacks for Guidelines purposes." Dey App'x at 2569. We conclude that the district court did not abuse its discretion in providing this explanation for using the amount of Finazzo's gain as a measure of loss for Guidelines purposes.

Relatedly, Finazzo appears to argue that the evidence did not support the district court's conclusion that the amount of kickbacks was a reasonable measure of loss. The district court's factual findings relating to loss must be established by a preponderance of the evidence. *United States v. Uddin*, 551 F.3d 176, 180 (2d Cir. 2009). However, "the court need not establish the loss with precision but rather need only make a reasonable estimate of the loss, given the available information." *Id.* (internal quotation marks omitted). We review such factual findings on loss for clear error. *Id.* Even assuming that the evidence does not establish a direct correlation between the amount of kickbacks Finazzo received and Aéropostale's loss, such a correlation is not required for Guidelines purposes. We are satisfied that the district court did not clearly err in finding that the amount of kickbacks was a reasonable estimate of the loss, given the evidence. At trial, Geiger testified that "any profits that [Finazzo] would have gotten, in my mind, would [otherwise] have accrued to the company[,] increasing its profitability." Dey App'x at 1423. Similarly, Geiger testified that any profits Finazzo received from South Bay "would have been at the direct cost to Aéropostale." *Id.* at 1422. Edward Slezak—Aéropostale's General Counsel—stated that he believed "every penny that [Finazzo] ever

8

got from South Bay should have been ours." *Id.* at 858. While Finazzo argues that South Bay's prices were fair, he has not pointed to evidence that shows any purpose for the kickbacks other than inflation of prices. We therefore conclude that the district court's loss calculation was a reasonable estimate, given the available information.[4]

D. Substantive Reasonableness of Sentence

Finazzo also challenges the substantive reasonableness of his sentence. The district court imposed a 96-month prison sentence after calculating a 108–135 month Guideline range. We review substantive reasonableness challenges under an abuse-of-discretion standard. *United States v. Thavaraja*, 740 F.3d 253, 258 (2d Cir. 2014). This review is "particularly deferential." *Id.* (quoting *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012)) (internal quotation marks omitted). Thus, we will only set aside a district court's substantive determination "in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *United States v. McIntosh*, 753 F.3d 388, 394 (2d Cir. 2014) (per curiam) (internal quotation marks omitted).

Finazzo rests his substantive-reasonableness challenge on the argument that the district court's loss calculation was improper. Having already determined that the district court's § 2B1.1 loss calculation was not improper, we have no difficulty concluding that Finazzo's below-guidelines sentence was substantively reasonable. *See United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011) (per curiam) ("[I]n the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstances. It is therefore difficult to find that a below-Guidelines sentence is unreasonable." (citation and internal quotation marks omitted)).

E. Forfeiture Instruction

In its forfeiture jury charge, the district court instructed the jury that "the Government need only establish the extent and forfeitability of the proceeds and a nexus between the specifically identified properties and the offenses by a preponderance of the evidence." Finazzo App'x at 121. The jury subsequently returned a $25,790,822.94

---

[4] In the opinion issued simultaneously with this order, we hold that, for restitution purposes, the kickback calculation was not a reasonable approximation of Aéropostale's loss supported by a sound methodology. However, as explained in that opinion, in order to use defendant's gain as a measure of the victim's loss for the purposes of restitution, this Court requires that there be a "direct correlation" between gain and loss. *United States v. Zangari*, 677 F.3d 86, 93 (2d Cir. 2012). This requirement constitutes a heightened standard that is not present in the Guidelines loss-calculation context. *See United States v. Certified Envtl. Servs., Inc.*, 753 F.3d 72, 102 (2d Cir. 2014) ("Though restitution and loss involve closely related calculations . . . the inquiries are not identical. . . . Because [a] defendant's culpability will not always equal the victim's injury, an amount-of-loss calculation for purposes of sentencing does not always equal such a calculation for restitution." (internal quotation marks and citations omitted)).

forfeiture verdict against Finazzo. Finazzo argues that the district court erred in instructing the jury that a forfeiture finding need only be supported by a preponderance of the evidence, rather than beyond a reasonable doubt. Finazzo's argument has no merit. Under this Court's precedent, forfeiture determinations must be supported only by a preponderance of the evidence. *United States v. Daugerdas*, 837 F.3d 212, 231 (2d Cir. 2016) ("For a criminal forfeiture order to pass muster, the government must establish, by a preponderance of the evidence, the requisite nexus between the property and the offense." (internal quotation marks omitted)); *United States v. Stevenson*, 834 F.3d 80, 85–86 & n.3 (2d Cir. 2016) ("[T]he amount of a forfeiture order must be supported only by a preponderance of the evidence." (internal quotation marks omitted)). Therefore, Finazzo's challenge fails.

F. Forfeiture Constitutionality

Finazzo also challenges the district court's determination that the jury's forfeiture award was not unconstitutionally excessive. "We review a district court's legal determinations regarding forfeiture *de novo* and its underlying factual findings for clear error." *United States v. George*, 779 F.3d 113, 122 (2d Cir. 2015). "A forfeiture is unconstitutionally excessive 'if it is grossly disproportional to the gravity of a defendant's offense.'" *United States v. Viloski*, 814 F.3d 104, 110 (2d Cir. 2016) (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)). This Court considers the following factors—known as the *Bajakajian* factors—in determining whether a forfeiture is grossly disproportional: (1) the essence of the crime and its relation to other criminal activity; (2) whether the defendant fits into the class of persons for whom the statute was principally designed; (3) the maximum sentence and fine that could have been imposed; and (4) the nature of the harm caused by the defendant's conduct. *Id.* The burden rests on the defendant to show the unconstitutionality of a forfeiture order. *United States v. Castello*, 611 F.3d 116, 120 (2d Cir. 2010).

On appeal, Finazzo challenges the district court's evaluation of the third factor, arguing that the court's purportedly incorrect Guideline calculation "fatally undermined" its consideration of that factor. Finazzo Br. at 95; *see Viloski*, 814 F.3d at 114 (stating that, in evaluating the third *Bajakajian* factor, this Court "look[s] especially to the applicable Guidelines penalties"). Once again, having found no error in the district court's Guidelines calculation, we reject Finazzo's challenge.

G. Attorney-Client Privilege

Finazzo contends that he is entitled to a new trial because "the government knowingly used misappropriated attorney-client privileged information" when it used an email Finazzo's attorney sent to him at his Aéropostale email account regarding Finazzo's will, which listed his assets, including his interest in several South Bay entities. Finazzo Br. at 100. "The attorney-client privilege protects communications (1) between a

10

client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). "Public, even extrajudicial, disclosures constitute a waiver of the privilege for the communications or portions of communications disclosed." *United States v. Jacobs*, 117 F.3d 82, 91 (2d Cir. 1997) (emphasis and internal quotation marks omitted), *abrogated on other grounds by Loughrin v. United States*, 134 S. Ct. 2384 (2014). Thus, "the question of whether the privilege applies . . . involve[s] a determination of whether the claimant asserting the privilege treated the communications in question in such a careless manner as to negate her or his intent to keep them confidential." *Mejia*, 655 F.3d at 132–33 (alterations and internal quotation marks omitted); *see also United States v. DeFonte*, 441 F.3d 92, 94–95 (2d Cir. 2006) (per curiam) (noting that attorney-client privilege would be waived if the claimant treated documents at issue "in such a careless manner as to negate her intent to keep them confidential"). The burden of establishing the existence of an attorney-client privilege rests with the party asserting it. *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000). "It is firmly established in this circuit that we review a district court's finding of waiver of the attorney-client . . . privilege[] for abuse of discretion." *Id.*; *see also Mejia*, 655 F.3d at 131–32 (applying abuse of discretion review to a district court's finding of waiver of attorney-client privilege).

The district court did not abuse its discretion in finding that Finazzo waived the privilege as to the email. Although the record is unclear regarding whether Aéropostale's 2004 or 2007 policy governing employees' computer usage was in place in August 2006—the time of Finazzo's communication with his attorney Angela Siegel—both policies specifically state that employees "should have no expectation of privacy when using Company Systems." Gov't App'x at 208; Dist. Ct. Dkt. No. 103-4, at 24. In addition, both policies notify employees that Aéropostale may "monitor[], access[], delete[] or disclose[]" all use of Company Systems without permission. *Id.* Each policy defines "Company Systems" to include "internal and external email." Gov't App'x at 207; Dist. Ct. Dkt. No. 103-4, at 23. In both 2004 and 2005, Finazzo signed forms acknowledging that he had read the Employee Handbook containing these policies. Furthermore, between 2002 and 2006, Finazzo signed quarterly Representation Letters stating that he was "familiar with the contents of the Employee Handbook." Gov't App'x at 246–69.

Despite Finazzo's familiarity with Aéropostale's computer policies, he used his Aéropostale email address to send and receive emails with his attorney. Specifically, he sent and received emails regarding his will on his Aéropostale email address on June 7, 2006. Notably, when Siegel sent the August 24 email for which Finazzo asserts attorney-client privilege, Finazzo responded from his company email, instructing Siegel to correct the value of one of the assets listed in the email attachment. Other than a self-serving affidavit, there is no evidence that Finazzo made any effort to preserve the confidentiality of these communications. *See In re Horowitz*, 482 F.2d 72, 80–82 (2d Cir. 1973) (stating

11

that, in a case where privileged information was transferred in a manner that gave another party access to it, "affirmative action to preserve confidentiality" was necessary to preserve the privilege). In these circumstances,[5] it was not an abuse of discretion for the district court to rule that Finazzo had not carried his burden to show that he had kept the August 24 email confidential. *Cf. Mejia*, 655 F.3d at 133 (ruling that an inmate's phone call was not protected by privilege because he was aware that his conversation was being recorded).

\* \* \*

We have considered the Appellants' remaining arguments and find them to be without merit. Accordingly, pursuant to this summary order and the opinion issued simultaneously with this order, we **AFFIRM** in part and **VACATE** and **REMAND** in part the judgments of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

---

[5] We note that measuring an individual's expectation of privacy in his or her corporate email is a highly fact-dependent inquiry. We need not, and do not, therefore, enumerate any particular dispositive factors.